## C. H. Chronister v. A. L. Anderson, Assignee.

1. PRACTICE—*Opening and Close of the Arguments.*—Where a party claims that a judgment is fraudulent and void, the burden of proof is cast upon him and it is not error to give him the opening and close of the arguments.

2. APPELLATE COURT PRACTICE—*Waiver of Objections.*—Where a party in a court of review does not specifically point out the particular interrogatories and answers thereto under which the evidence complained of, was admitted, the objections will be treated as waived.

3. TRIALS BY THE COURT—*Presumptions.*—Where a case is tried without a jury the court is presumed to have rejected all improper evidence, and if there is sufficient evidence in the record to sustain the finding and judgment, the admission of improper evidence will not be ground for reversal.

4. FRAUD—*Transactions When Void as to Creditors.*—Where a merchant gave a judgment note which was without consideration, and judgment was entered upon it and execution issued, it was held upon the facts as found in this case that such note was void as to creditors of such merchant for the want of a consideration, and that the judgment and execution issued thereon were also void.

5. SAME—*Circumstances Constituting Fraud as to Creditors.*—In this case the court reviews the evidence and finds that an intended fraud has been perpetrated upon creditors.

**Insolvency Proceedings.** Appeal from the County Court of Logan County; the Hon. L. C. SCHWERDTFEGER, Judge, presiding. Heard in this court at the November term, 1897. Affirmed. Opinion filed February 10, 1898.

BEACH & HODNETT and LEFORGEE & LEE, attorneys for appellant.

For the purpose of showing that a sale of goods was fraudulent by subsequent creditors of the buyer, evidence showing the conduct of such buyer in relation to the management of the business after such sale, is incompetent as against the claim of the seller for

Chronister v. Anderson.

unpaid purchase money in the absence of proof show-
ing a relation between buyer and seller of such conduct.
John Schroeder v. Thomas Walsh, 120 Ill. 403.

It is incumbent on the creditors attacking a sale
upon the ground of fraud to establish fraud by a pre-
ponderance of the evidence.    Carter v. Gunnells, 67
Ill. 271; Pratt v. Pratt, 96 Ill. 184; Schroeder v. Walsh,
120 Ill. 403; Farwell et al. v. Cohen, 138 Ill. 216;
Bryant v. Simoneau, 51 Ill. 324.

Where an assignment is made for the benefit of
creditors, the assignee takes the property subject to all
existing claims.    White v. More, 54 Ill. App. 606;
Watson v. Fletcher, 49 Ill. 498.

Mere inadequacy of price is not conclusive proof of
fraud.    Mathews v. Reinhardt, 149 Ill. 635.

R. H. PATTON, BLINN & HARRIS, attorneys for appel-
lee; W. R. BALDWIN, ROBERT HUMPHREY, S. L. WAL-
LACE, J. T. HOBLIT and KING & MILLER, of counsel.

Appellees were required to affirmatively prove the
allegations of their petition and therefore had the right
to open and close.    But if the court erred in this
regard, it is not a reversible error.    Thompson on
Trials, Sec. 228; Carpenter v. First National Bank, 19
Ill. App. 549; South Park Commissioners v. Trustees
of Schools, 107 Ill. 489; McReynolds v. B. & O. R'y
Co., 106 Ill. 152; Chicago, B. & Q. R. R. v. Bryan, 90
Ill. 126.

MR. JUSTICE GLENN DELIVERED THE OPINION OF THE
COURT.

It appears from the record in this case that the
appellant herein, V. H. Chronister, on the thirtieth day
of March, 1895, purchased of David Gillespie, of Lin-
coln, Illinois, a stock of groceries and the fixtures for

the sum of $1,173.    At the time he made this purchase
he was engaged in the grocery and six other kinds of
business in Decatur, in this State, and was about twenty-
seven years of age.    He took possession of the stock
and placed in charge of the store he purchased of Gil-
lespie, Walter Fristoe, as general manager, who was to
receive as compensation for his services one half the
profits.    The business was conducted under the firm name
of Walter Fristoe and Company, by Walter Fristoe, ex-
cept upon exceptional visits by Chronister to the store
to examine the business.    The stock and capital to
carry on the business was to be furnished by Chronis-
ter.    He claims that in the latter part of March, 1896,
he discovered the venture was a losing one, in which
he had invested over $5,000, and he had received little
or practically nothing in return for his investment.    He
says: "There was a shortage I never could find and could
not account for."    The stock at this time was not worth
to exceed $2,000.    The collectible accounts $333.82.
The indebtedness of the firm at this time, not including
an account due Young Bros. of $400, was $2,231.97.
Chronister claims on the thirty-first day of March, 1896,
he made a sale of this stock of groceries and the fix-
tures, by a written contract of that date to Fristoe, by
which Fristoe was to pay all the debts of the firm of
Walter Fristoe and Company, except the debt owed
Young Bros. of $400, and pay Chronister the sum of
$4,700, $500 to be paid in cash and the $4,200 he was
to give his promissory note for, due one day after date
with seven per cent interest, with warrant of attorney
to confess judgment on the note at any time.    Fristoe
paid the $500 and gave his note to Chronister accord-
ing to the terms of the contract.    Fristoe, on the first
of April, 1896, took possession of the store, the stock of
goods and fixtures, and conducted the business in
his own name.    Between this time and the twenty-

fourth day of December, 1896, he paid the indebtedness of the firm, $2,231.97. His purchase of goods to replenish his stock from April 1, 1896, to October 1, 1896, was on sixty days credit and averaged about $1,000 per month. For October his purchases were $1,625.23, for November $3,766.88, and for December up to the twenty-sixth of the month, $2,741.24. On the twenty-sixth day of December his stock, fixtures and accounts were sold for $4,998.66 at the assignees' sale.

On the twenty-fourth of December, 1896, Chronister procured a judgment to be taken by confession on the note given for the claimed purchase for $4,200 in Christian County amounting at that time to $4,412.33. On the twenty-fifth of December, Fristoe met Chronister in Decatur and the next morning, the twenty-sixth, the execution on the judgment taken in Christian County was placed in the hands of the sheriff of Logan County, and the stock, fixtures, etc., seized under execution. On the same day Fristoe and Chronister met in the office of Beach & Hodnett and made an assignment to A. L. Anderson. By an order of the county court by consent of the parties the stock was turned over to the assignee, who sold the stock and now has the proceeds. Chronister then filed a petition in the county court to have himself declared a preferred creditor by reason of the lien of his execution. The various creditors filed an answer charging that the judgment, while regular upon its face, was based upon a note that was given without any consideration in pursuance of a fraudulent conspiracy between Fristoe and Chronister to defraud the creditors of Fristoe. That the sale was not real or genuine, but a pretended sale with the intent and design that Fristoe should buy a large stock of goods which should afterward be taken to satisfy the note given as representing a part of the purchase price of the sale. That the entire

transaction was a fraudulent conspiracy to defraud the creditors.

The case was tried by the County Court without a jury, who found that the allegations of the answer of the assignee was fully sustained. That the note, judgment and execution were fraudulent and void, and Chronister was not entitled to take or receive anything out of the proceeds of the sale of stock.

Chronister brings the case to this court by appeal.

It is claimed the court below erred in allowing the appellees in the argument before the court to make the opening and closing arguments. We do not think this objection is well taken. Appellees claimed the judgment upon which the execution was issued and the levy made was fraudulent. The burden of proof was cast upon them, and we do not think it was error, especially as the case was tried before the court without a jury, to give them the opening and closing arguments.

It is claimed by appellant that the trial court erred in permitting appellees to show the conduct of Fristoe in the management of the business after the sale, to effect the claim of appellant for the unpaid purchase money, in the absence of proof showing a relation between buyer and seller of such conduct. Counsel for appellant do not specifically point out the particular interrogatories and answers thereto under which this objectional evidence was admitted. When this mode of presenting objections to evidence to a court of review is adopted, the objections may be treated as waived. This case was tried by the court without a jury and the same rule obtains, as does in a chancery cause, which is that the court is presumed to have rejected all improper evidence, and if there is sufficient evidence in the record to sustain the finding and judgment of the court, the admission of improper evidence will not be a

ground for reversal.   Mer. Desp. Trans. Co. v. Joesting, 89 Ill. 152.

It is claimed on the part of appellees that the sale of the stock of goods, fixtures, horses and wagon by appellant to Walter Fristoe was not only fraudulent and void as to the then existing creditors of Walter Fristoe, but the design and scheme was to defraud his subsequent creditors.   We think from the evidence there is good grounds for this contention.

When appellant, on the thirtieth day of March, 1895, bought the stock of goods of Mr. Gillespie, and commenced business under the name and style of Walter Fristoe & Company, he was sailing under false colors. He admits that he placed Fristoe in charge as general manager, and he was to receive as compensation for his services one half of the profits.   As between appellant and Fristoe, Fristoe was not a partner; he was simply an agent.   If appellant's version of this matter is to be relied on, he received nothing for his services, for he says the venture was a losing one.   During the year this firm was in business appellant says he invested in the same over $5,000, and he received in return for this investment little or practically nothing.   Notwithstanding this year's experience with Fristoe in business, on the thirty-first day of March, 1896, he sold the stock fixtures in the store and horses and wagon at Lincoln to Fristoe, and received in part payment therefor his note for $4,200, due one day after date with seven per cent interest, without any security. It seems as if, up to this time, appellant was attempting to establish for Fristoe a credit by which in the future he might buy goods.

This note for $4,200, it is claimed by appellees, is without any consideration, or that the consideration was so grossly inadequate that it was void as to the creditors of Fristoe.

Under the terms of the written contract between appellant and Fristoe, Fristoe was to take the stock of goods and fixtures at $3,300, the horses and wagon at $200, and he was to have the collectible accounts due the firm, $333.82. He was to pay appellant $500 in cash and give him his note for $4,200 due one day after date with seven per cent interest, and to pay the debts of Walter Fristoe & Company, except a debt of $400 which was to be paid by appellant. In this transaction or sale, Fristoe agrees to pay appellant $3,098.15 more than he owes him, or in other words there is of the $4,200 note given by him to appellant, that is without any consideration. Fristoe receives the stock of goods, the fixtures, and horses and wagon at $3,500 and the collectible accounts, $333.82, making in all $3,833.82 that he receives of appellant. In consideration for this he pays appellant $500 in money and his note for $4,200 and agrees to pay the debts of Walter Fristoe & Company, which is $2,231.97, making in all that he pays and agrees to pay the sum of $6,931.97. Take from this the indebtedness which he agrees to pay, that is, in reality, appellant's indebtedness, which is $2,231.97, and the balance is $3,098.15, which is the amount of the note that is without consideration, which is over three fourths of the face of the note. In the case of Monell v. Scherrick et al., 54 Ill. 269, when the consideration paid for the property is only one fourth of the value of the property, this is evidence of fraud.

We, however, find from the evidence that the note upon which the judgment was rendered by confession, and the execution was issued and levied upon the goods, is without any consideration whatever.

The stock of goods, fixtures and horses and wagon and collectible accounts, it appears from the evidence, were only worth $2,533.82, instead of $3,833.82, for which they were turned over to Fristoe at the time of

the sale, March 31, 1896. Several witnesses who saw the goods at this time and were familiar with and had a knowledge of the value of such property and in no way interested say the stock of merchandise and fixtures did not exceed in value $2,000. Taking this as the value of the stock and fixtures, we have this as the result, stock and fixtures, turned over to Fristoe $2,000, horses and wagon $200, collectible accounts due Fristoe & Company, $333.82, making in all $2,533.82. For this Fristoe paid appellant $500 in cash, gave his note for $4,200, and agreed to pay and did pay the debts of Walter Fristoe & Company, which amounted to $2,231.97. The total amount paid by Fristoe to appellant for the stock, fixtures, horses and wagon and collectible accounts amounts to the sum of $6,931.97. Take from this the value of what Fristoe received for this $2,533.82, and we have $4,398.15 more than the amount the note was given for, and for which there was no consideration passed to Fristoe. It is apparent this note is void as to Fristoe's creditors, and also the judgment entered thereon and the execution issued on the judgment. The assets, on March 31, 1896, the time of the sale of Walter Fristoe & Company, sold to Fristoe, were $2,533.82. The indebtedness at that time was $2,-631.97. At the time the store was closed, December 26, 1896, Walter Fristoe's indebtedness was $9,628.38. The stock turned over to his assignee was sold by him for $4,998.66. Walter Fristoe, from April 1, 1896, to October 1, 1896, bought $7,316.70, or an average of $1,258.35 per month. For the month of October, 1896, he purchases $1,625.23, in the month of November, $3,766.38, and in December prior to the twenty-sixth he purchases $2,741.24, making a total for this time of $8,132.85, an average of $2,710.25 per month. By this it will be seen he was swelling his credit month by month, until it

would stand no more, and then Chronister levies on
the stock of merchandise and fixtures with his execu-
tion issued on his Christian County judgment, and
closes the store and takes the goods Fristoe had pur-
chased of appellees on a credit of sixty days.   On the
same day this stock was levied on, the twenty-sixth day
of December, 1896, Fristoe, with his attorneys, assisted
by appellant and his attorney, makes an assignment
for the benefit of creditors to A. L. Anderson, which is
filed in the county clerk's office of Logan County, and
subsequently the sheriff was ordered to turn over the
stock and fixtures levied on by him to the assignee,
which were afterward sold by the assignee by agree-
ment of the parties interested.   Then appellant files
his petition in this case asking the County Court to
enter an order directing the assignee to pay him the
full amount of his judgment which will absorb with
the costs about the amount of money in the hands of
the assignee.

   We think that from the transactions that took place
between appellant and Fristoe, and their conduct in
this matter, they are guilty of fraud in hindering and
delaying appellees, Fristoe's creditors.   It must be re-
membered that parties entering into fraudulent schemes
endeavor to cover up the true purpose.   We must not
expect to find clear and undisputable evidence of its
existence.   The parties seldom intrust their plans to
others, and usually, as far as possible, adopt legal forms
and the usual course of business to conceal their real
designs.   Gill v. Crosby, 63 Ill. 190.   This was the
exact course adopted in this case.   The usual note was
given with a warrant of attorney to confess judgment at
any time.   This note lies dormant in the hands of appel-
lant until Fristoe had accumulated $5,000 of stock and
had created an indebtedness of $9,628.38, and had paid
the indebtedness of Walter Fristoe & Company, amount-

ing to $2,231.97, which was really the indebtedness of appellant. Then he goes to a foreign county and has a judgment entered by confession on this note, which is without any consideration, and has an execution issued thereon and has it levied on the goods appellees had sold Fristoe. It is, however, insisted that at the time this note was given appellees were not creditors of Fristoe. That is true. But they were at the time the mischief was attempted to be perpetrated, when the collection, of this fraudulent note was attempted to be enforced. If there had been no effort to enforce its collection, no mischief would have been done appellees. To enforce the collection of a note without consideration out of assets that should go to the then existing creditors of the maker of such note, is a fraud upon such creditors, and should not receive any countenance in a court of justice.

We hold the note given by Fristoe to appellant for $4,200 was without consideration, that the judgment entered thereon in the Circuit Court of Christian County, the execution issued on such judgment, and the levy thereunder void as to appellees, and the order of the County Court denying the prayer of appellant's petition should be affirmed.