REGINALD THOMPSON, Plaintiff-Appellant, v. GREEN GARDEN MU-TUAL INSURANCE COMPANY, Defendant-Appellee.

Third District   No. 3—93—0566

Opinion filed May 4, 1994.

William J. Sneckenberg, of William J. Sneckenberg & Associates, Ltd., of Chicago, for appellant.

Peter W. Schoomaker, of Condon & Cook, of Chicago, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiff Reginald Thompson filed suit in the circuit court of Will County against defendant Green Garden Insurance Company to recover damages for vandalism to a building owned by plaintiff and insured by defendant. The trial court granted defendant's motion for summary judgment on the ground that plaintiff's building had been vacant for more than 30 days prior to the loss and was thus excluded from coverage by the terms of the insurance policy. On appeal, plaintiff argues that summary judgment was erroneously granted

because the pleadings, depositions and affidavits present genuine issues of material fact concerning defendant's alleged vacancy defense. We agree, and therefore, we reverse and remand.

Plaintiff owned a two-story residence in Steger, Illinois, which was divided into two apartments, one on the first-floor and one on the second. Tenants occupying the first-floor apartment moved out in June of 1990, and at the end of October 1990, plaintiff evicted the tenants of the second-floor apartment for nonpayment of rent. He then began to do extensive work inside the building, including painting and plastering in both apartments and rebuilding the downstairs bathroom by installing a new ceiling, new floor, new vanity cabinet and new faucets.

Plaintiff did most of the reconstruction work on the building himself. He worked in the building nearly every day and slept overnight on an average of three to five nights each week. In addition to stoves, refrigerators, kitchen chairs, and an air conditioner, plaintiff kept an air mattress on the premises and kept all the utilities connected.

On January 27, 1991, plaintiff discovered that the property had been vandalized. Some windows and a storm door were broken, the gas supply to the building had been shut off at the meter, and ice was visible in the toilets and faucets. After the gas was turned on by the gas company and heat restored, the radiators began to leak, floors and rugs became water-soaked, plaster fell, and other plumbing damage occurred.

Plaintiff notified defendant of the loss, and adjuster Michael Phillips investigated. Plaintiff informed Phillips that no tenants had resided in the two apartments since early November of 1990 and that two new tenants had signed leases and paid deposits prior to January 28, 1992. After meeting with Phillips, plaintiff submitted a contractor's estimate for repair of the damages, and Phillips responded on April 1, 1991, with an offer of $10,883 which plaintiff rejected. On April 24, 1991, defendant paid plaintiff $3,600 for lost rents. Another offer of $15,346 for damage repair made by defendant on May 2, 1991, was also rejected by plaintiff as insufficient.

On May 8, 1991, defendant withdrew all previous settlement offers and asked plaintiff to submit a sworn proof of loss with new estimates. Plaintiff prepared a sworn claim for damages totalling $37,560.50, obtained a police report and submitted to an examination under oath. Defendant then offered to settle the claim for approximately $23,000, and again plaintiff refused the offer. Plaintiff's final settlement demand of $61,407 was rejected by defendant on March 13, 1992, and plaintiff filed his complaint shortly thereafter.

Defendant's claims manager testified at her deposition that, at the time of the May 8, 1991, letter, defendant had no question with respect to coverage of plaintiff's claim under the policy. Although the original report of loss filled out by Phillips noted that the building had been vacant for 30 days, plaintiff was never advised by defendant that coverage was in doubt or would be denied. The only dispute during negotiations concerned the amount of money due plaintiff.

Between June 21, 1991, and March 13, 1992, attorneys for defendant sent at least 10 letters to plaintiff or plaintiff's attorney concerning the requirements that plaintiff submit a sworn proof of loss, produce documents, and appear for an examination under oath. Each letter contained a paragraph stating that neither the letter nor its contents were intended to be a waiver of any of the terms or conditions of the insurance policy at issue or of defendant's rights under that policy.

In response to plaintiff's complaint, defendant filed an answer and four affirmative defenses. The third and fourth defenses were filed 10 months after the answer and set forth the "vacancy" defense at issue on appeal. The insurance policy provides that loss caused by vandalism or malicious mischief is covered, but also provides:

"We will not pay for loss:
***
(b) at any insured premises which has been vacant for more than 30 consecutive days immediately preceding the loss. A building under construction is not considered vacant."

Defendant asserted that plaintiff's premises were vacant for more than 30 consecutive days immediately prior to the loss and, therefore, were not covered by insurance.

Defendant then filed a motion for summary judgment, and after plaintiff responded and arguments were heard, the trial court granted the motion. This appeal followed.

Plaintiff contends that summary judgment was erroneously granted because questions of material fact are presented regarding three issues: (1) whether defendant waived the vacancy defense, (2) whether the premises were actually vacant, and (3) whether the remodeling work undertaken by plaintiff came within the "under construction" exception to the vacancy defense.

A motion for summary judgment should be granted only when the pleadings, depositions, admissions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005(c).) The Illinois Supreme Court has said:

"While use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit [citation],

it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt." *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.

■ Plaintiff first contends that a question of fact exists as to whether defendant waived its vacancy defense. The controlling rule of law was stated in *Kenilworth Insurance Co. v. McDougal* (1974), 20 Ill. App. 3d 615, 620, 313 N.E.2d 673, 677, as follows:

> "[A]n insurer may waive a policy defense by continuing under a policy when it knows, or in the exercise of ordinary diligence, could have known the facts in question giving rise to the defense. [Citations.] If the insurance company is fully advised of the facts bearing on its policy defense and does not then insist on noncoverage but recognizes the continued validity of the policy by requiring the insured to go to the trouble and expense, if any, of preparing proofs of loss and related matter, an intention to waive the policy defense would follow. [Citations.]"

Here, defendant had knowledge that no one had resided in the rental units for more than 30 days prior to the loss while plaintiff undertook repairs and renovation. That fact was noted on the original loss report prepared by defendant's adjustor. After making two offers of payment for damages and after making a payment for lost rent, defendant then, in a letter dated May 8, 1991, insisted that plaintiff obtain additional documentation and file a sworn proof of loss. Those actions and communications by defendant were, so far as the record discloses, done without any reservation of rights. Thus, defendant led plaintiff to believe that coverage would be provided for the damages as it was for lost rents. It was only beginning with a letter from defendant's counsel, dated June 21, 1991, that a reservation-of-rights paragraph appeared in each letter to plaintiff.

Establishing waiver of a policy defense does not require strong proof, but only such facts as would make it unjust, inequitable or unconscionable to allow the defense to be asserted. (*State Farm Mutual Automobile Insurance Co. v. Gray* (1991), 211 Ill. App. 3d 617, 621, 570 N.E.2d 472, 475.) When the insurer learns of the factual basis for a policy defense and does not assert the defense but recognizes the continued validity of the policy by requiring the insured to go to the trouble and expense of preparing the documents necessary to prove the loss, the legal result is a waiver of the defense. See *Traders' Mutual Life Insurance Co. v. Johnson* (1902), 200 Ill. 359, 363, 65 N.E. 634.

■ In this case, plaintiff was required to provide a sworn proof of loss along with other documents and to submit to an examination

under oath with no notice that defendant intended to deny coverage. We hold that a material question of fact exists as to whether the doctrine of waiver bars defendant from asserting a vacancy defense.

Defendant cites *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223, as requiring plaintiff to plead affirmatively defendant's waiver of the vacancy defense. However, *Florsheim* is distinguishable from the case at bar in that the insured's complaint affirmatively showed on its face a breach of the policy by the insured (*i.e.*, suit filed after contractual limitation period) without alleging a waiver of the breach. Here, plaintiff's complaint did not include allegations supporting a vacancy defense, and defendant did not file its vacancy affirmative defense until 10 months after its answer to the complaint. Plaintiff is not required to anticipate defenses to his complaint. *Cunningham v. City of Sullivan* (1958), 15 Ill. App. 2d 561, 147 N.E.2d 200.

■ As another ground for reversing the summary judgment order, plaintiff contends that a question of material fact exists as to whether the premises were vacant within the meaning of the policy. Plaintiff testified that he was at the house almost every day, he slept there an average of three to five days per week, and he had some furniture in the house.

Illinois courts have long recognized that the interpretation of the word "vacant" as used in an insurance policy is a question of law, but whether the insured dwelling was "vacant" at the time of loss is a question of fact. (*Home Insurance Co. v. Mendenhall* (1897), 164 Ill. 458, 469, 45 N.E. 1078; *Cavin v. Charter Oak Fire Insurance Co.* (1978), 66 Ill. App. 3d 808, 810, 384 N.E.2d 441, 442.) The term "vacant" has been defined as meaning generally empty or deprived of contents (Annot., 47 A.L.R.3d 398 § 3(b) (1973) (and cases cited therein)), and one Illinois court has said that "[v]acant means empty of everything but air." *Gash v. Home Insurance Co.* (1910), 153 Ill. App. 31, 33.

By contrast, use of the word "unoccupied" or the phrase "vacant or unoccupied" to describe an exclusion from coverage has been interpreted to mean that no one was living in the dwelling or had actual use or possession of the dwelling at the time of loss. (*Schuermann v. Dwelling House Insurance Co.* (1896), 161 Ill. 437, 440, 43 N.E. 1093; *Cavin v. Charter Oak Fire Insurance Co.*, 66 Ill. App. 3d 808, 384 N.E.2d 441.) Thus, though plaintiff was not living in the house, it is beside the point since the policy excludes only vacant premises, not unoccupied premises. The uncontradicted testimony that plaintiff had some possessions of value and utility in the house was certainly sufficient to raise a question of fact as to whether the dwelling was vacant within the meaning of the policy.

As an additional basis for reversing the summary judgment, plaintiff contends that his work renovating the two apartments came within the construction exception to the vacancy exclusion. However, since we are finding for plaintiff on the vacancy issue and remanding for trial, we need not discuss the applicability of this exception to the rule.

Defendant also claims we should affirm the trial court solely because the record on appeal is incomplete since no transcript was made of the arguments before the court on the motion for summary judgment and only fragments of depositions were attached to plaintiff's motion for summary judgment. Defendant cites the rule that any doubts arising from the incompleteness of the record on appeal will be resolved against the appellant. See *In re Estate of Thompson* (1985), 131 Ill. App. 3d 544, 547, 475 N.E.2d 1135.

■ However, defendant's concern relating to the incompleteness of the excerpts from depositions is waived on appeal since the issue was not raised in the trial court. (*Smith v. Ashley* (1975), 29 Ill. App. 3d 932, 934, 332 N.E.2d 32, 33.) As to the absence of a report of the proceedings before the trial court, defendant ignores the fact that the trial court's summary judgment order was based solely upon the pleadings, depositions, and affidavits, all of which can be reviewed without resort to a transcript of the argument before the court. (*Korogluyan v. Chicago Title & Trust Co.* (1991), 213 Ill. App. 3d 622, 627, 572 N.E.2d 1154, 1159.) Defendant's argument is without merit.

For the reasons stated, we reverse the judgment of the circuit court of Will County and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BARRY and BRESLIN, JJ., concur.