Phenix Milling Co. v. Anderson.

## Phenix Milling Co. v. A. L. Anderson, Assignee, et al.

1. VOLUNTARY ASSIGNMENTS—*What the Assignee Takes.*—If an assignor has no right to the property assigned the assignee acquires no title to it. He takes no greater interest or better title to the property than the assignor possessed.

2. SAME—*Rule of Superior Diligence Does Not Apply.*—The rule in equity—that when a creditor has, through the instrumentalities of a court of equity, discovered property which he had been unable before to discover and seize, upon execution at law, he becomes entitled to preference over other creditors to have his judgment paid first—does not apply to the assignments for the benefit of creditors under the insolvent act.

3. SAME—*Replevin Does Not Lie.*—A claimant of property in the hands of an assignee can not maintain replevin for it; he must present his claim by petition to the County Court having jurisdiction of the matter.

**Voluntary Assignment.**—Petition to recover the proceeds of property sold, etc. Trial in the County Court of Logan County; the Hon. LOUIS C. SCHWERDTFEGER, Judge, presiding. Petition dismissed. Appeal by petitioner. Heard in this court at the May term, 1898. Reversed and remanded, with directions. Opinion filed October 5, 1898.

### STATEMENT.

The contention in this case arises on a petition and amended petition filed in the County Court of Logan County, by appellant against appellee A. L. Anderson, assignee of Walter M. Fristoe, insolvent, et al., praying for an order upon appellee to deliver and pay to appellant the

proceeds of 420 quarter-barrel and 160 one-eighth-barrel sacks of flour, being 125 barrels in all. No answers were filed to appellant's petitions. In March, 1896, Walter M. Fristoe, then insolvent, was in the grocery and provision business in a small way in Lincoln, Illinois; at that time he gave to one Chronister his judgment note for $4,200 entirely without consideration, and agreed with Chronister that he would continue in business and buy goods on credit, and with the intent not to pay for the same until he should purchase and get into his store a stock of goods that should be of sufficient value, so that when taken and sold under execution it would produce enough to pay off any execution to be issued on a judgment to be thereafter taken by confession on said judgment note by Chronister, and by that means to defraud all who should thereafter sell Fristoe goods on credit.

Under this agreement Fristoe continued in business until December 26, 1896. On December 15, 1896, Fristoe, under his fraudulent arrangement with Chronister, with the preconcerted intention never to pay for the same, purchased of the Phenix Milling Company 480 quarter-barrel sacks and 160 one-eighth-barrel sacks of flour on credit of thirty days, to be delivered by the Phenix Milling Company to him on cars at Lincoln, Illinois, for the sum of $528. The Phenix Milling Company, without any notice or knowledge of Fristoe's insolvency, or of the conspiracy between him and Chronister or of Fristoe's intention not to pay for the flour, and believing Fristoe to be an honest and solvent merchant, immediately shipped the flour to Fristoe at Lincoln, Illinois, in sacks plainly marked "Phenix Milling Co., Best XXXX Minnesota," and the flour arrived in Lincoln on December 24, 1896, and all of it, except eighty quarter-barrel sacks, was taken by Friscoe from the car and placed in his store on the same day; the eighty sacks were left by Fristoe in the car. Neither Fristoe at that time, nor his assignee subsequent to that time, had any other flour in his store thus marked or branded.

By a preconcerted arrangement between Fristoe and

Chronister, Chronister took judgment on said judgment note by confession in the Circuit Court of Christian County, Illinois, on December 24, 1896, and caused execution to be issued thereon the same day, directed to the sheriff of Logan county to execute.

On December 26, 1896, Chronister placed said execution in the hands of the sheriff of Logan county to execute; on that day, in the morning, the sheriff levied said execution on the stock of goods in Fristoe's store and on all of his personal property, excepting the eighty quarter-barrel sacks of flour bought of appellant by Fristoe and left in the car, and took possession of the property levied on under the execution. On the same day after the levy of the execution, Fristoe made a voluntary assignment to A. L. Anderson by a formal deed of assignment of all of his estate (including said flour), which vested in the assignee all the title Fristoe had, and Anderson qualified as assignee, and on December 27, 1896, obtained possession of all of Fristoe's estate, including all the flour in dispute. Anderson, as assignee, took the eighty sacks of flour left in the car and placed them in the store of Fristoe, with the other flour bought of appellant. The cost price and value of the eighty sacks was $92, and the assignee realized more than that sum on its sale. Before the assignee could get possession of the eighty sacks of flour left in the car by Fristoe, and without the knowledge or consent of appellant, he paid the railroad company $31.89 freight on the whole consignment. Appellant's flour was all piled up in Fristoe's store where such goods were kept, and none of it was sold by Fristoe; it was all in sacks plainly branded and marked "Phenix Milling Co. Best XXXX Minnesota," and was easily and plainly distinguishable from any other flour or goods in the store, and its identity was not lost by being intermixed with other flour or goods. Appellant had no knowledge or notice of Fristoe's fraud upon it until December 27, 1896.

Appellant, finding all of its flour in the store in possession of the assignee, at once rescinded the sale thereof, and demanded the possession thereof from Anderson, the assignee, who refused to give up the flour.

Thereupon, on January 7, 1897, appellant filed its petition in the County Court, praying that court to order the assignee to deliver up the flour to appellant, and in the meantime to restrain the assignee from selling the flour. On January 7, 1897, defendant, A. L. Anderson, assignee, entered his appearance to the petition filed by appellant by a written instrument filed in this cause by him, reserving the right to file answer on or before January 15, 1897.

On January 12, 1897, the assignee filed an *ex parte* petition in the County Court praying the court to grant him leave to sell the assigned estate, including the flour in dispute, with directions to hold the proceeds of the sale subject to the order of the court. The court granted the leave to sell the estate as prayed for, and the assignee under this leave sold all of the flour in dispute without the consent and against the will of appellant, for a sum in excess of $578, and kept no separate account of the funds arising from the sale of the flour, intermixing the funds received for this flour with other funds in the bank, received by him from the sale of other goods assigned to him by Fristoe; this action of the assignee was also without the consent and against the will of appellant. In the meantime appellant's petition was pending and undetermined in the County Court; and on April 28, 1897, after all of appellant's flour had been sold by the assignee, appellant, by leave of the court, filed its amended petition in this cause, reciting the filing of its original petition and the sale of the flour in dispute under the direction of the court for more than $578, and praying the court to make an order and decree requiring the assignee to pay to appellant the $578, proceeds of the flour, less the sum of $31.89 paid thereout for freight by Anderson.

Claims aggregating about $7,000 were proven up against Fristoe's estate for goods sold by a large number of firms and corporations to him after he had entered into the conspiracy with Chronister; all such goods represented by these various claims, were purchased and obtained by Fristoe on credit in pursuance of his conspiracy with Chronister, with the intent on his part not to pay for the same, and with the

intent on Fristoe's part, so far as the same should remain unsold by him, that the same should be seized under Chronister's fraudulent execution. These various claimants had no notice or knowledge of Fristoe's fraudulent intention or insolvency until after the making of the assignment to Anderson. All of the goods and stock in trade of Fristoe (exclusive of the fixtures, safe, horses, delivery wagons and harness) were obtained in the same fraudulent manner and for the same corrupt purpose as the flour of the Phenix Milling Company. The only fund now in the hands of the assignee is the proceeds of the assigned estate, including some $333 collected by the assignee on accounts due Fristoe, and which assigned estate (with the exceptions above noted) was obtained by Fristoe in the same manner as that of the flour of appellants. The assigned goods and stock in trade other than those of appellant, and three other firms, were by Fristoe mixed up with the stock in his store and so intermixed that the identity of each purchase was lost, and portions of the same were sold, the number and amount of such sales not being ascertainable.

No claimant or claimants, excepting appellant and three other firms, ever demanded the possession of their respective goods or in any manner rescinded or attempted to rescind the sale or sales thereof to Fristoe, or filed any petitions for the recovery thereof or for the recovery of the proceeds thereof.

All of the other persons, firms and corporations having claims against Fristoe's estate (including appellant) employed attorneys to represent them in contesting the validity of the fraudulent judgment and execution of Chronister and carried such contest to a successful issue, and Chronister's judgment and execution were thereby adjudged to be fraudulent and of no effect.

Appellant knew before the sale of its flour by the assignee that he had possession of it, and did not bring any replevin suit to recover it, but instead instituted this proceeding. Neither did appellant nor any other of Fristoe's honest creditors have knowledge of the evidence by which the

fraud of Chronister and Fristoe was established, until the
same was developed and demonstrated on the trial touching
the validity of Chronister's execution claim, by the joint
efforts of all of Fristoe's honest creditors, including appellant;
but the Phenix Milling Company was in possession of such
facts and circumstances as induced them to believe that
Fristoe's failure was fraudulent, and that by fraud he had
obtained possession of their goods with the intent not to
pay for them.

Appellant, on December 27, 1896, had determined to bring
legal proceedings against Fristoe's assignee to recover pos-
session of the 580 sacks of flour in dispute. If Chronister's
judgment and execution had been sustained, the same would
have consumed all of the assets of Fristoe's estate. Appel-
lant's petition and amended petition were pending and
undetermined in the County Court from the dates they
were filed until the trial in this cause, April 23, 1898, and
no answers were ever filed thereto, but the assignee by his
attorney, and a large number of the other creditors of
Fristoe by their respective and several attorneys, appeared
at the trial in the County Court and contested appellant's
right to the proceeds of the 580 sacks of flour, under the
stipulation and evidence recited in the abstract filed in this
cause, all of which stipulated facts and other material facts
brought out by the evidence being recited in this statement.

The County Court entered a judgment and decree deny-
ing the relief prayed for by appellant, and dismissed its pe-
tition and amended petition and rendered judgment against
appellant for costs. Appellant excepted to the ruling of
the County Court in the premises and appealed to the Ap-
pellate Court, and assigns for error the ruling of the County
Court—

First. In denying the prayer of its petition and amended
petition and in dismissing the same and rendering judgment
against it for costs.

Second. In not ordering the assignee to pay it $92, the
value of the eighty sacks left in the car and not levied on
by the Chronister execution.

Third. In not ordering the assignee to pay over to appellant $546.11, the proceeds of the whole 580 sacks of flour, with interest from April 15, 1897.

James T. Hoblit, attorney for appellant.

King & Miller, attorneys for appellee; W. R. Baldwin, Blinn & Harris, S. L. Wallace, R. H. Patton and Robert Humphrey, of counsel.

Mr. Presiding Justice Glenn delivered the opinion of the court.

It is conceded by the stipulation upon which this cause was tried, that Walter Fristoe, at the time he purchased the flour in controversy, did it in pursuance of a conspiracy entered into between him and one Chronister with the preconceived intention of not paying for it, and also with the intent to have it seized and sold under a fraudulent execution, in favor of Chronister and against him, and that the appellant had no knowledge or notice of the fraud intended to be practiced on it, or of Fristoe's insolvency, until after the flour came into the possession of him and that of his assignee.

The appellant, on the 27th day of December, 1896, having received knowledge of Fristoe's fraud upon it and finding all of its flour sold to Fristoe in his store in the possession of his assignee, immediately rescinded the sale and demanded the possession thereof from Anderson, the assignee, who refused to give up the flour. The appellant filed its petition in the County Court on the 7th day of January, 1897, praying the court to order the assignee to deliver up the flour to appellant, and in the meantime to restrain the assignee from selling it. That the appellant had the right to rescind the contract for the sale of the flour, under the facts and circumstances in this case, is so well settled by an unbroken line of authorities that a citation of them would seem unnecessary.

It is claimed by appellee that as it is admitted by the

stipulation that appellant, at the time of the filing of its petitions in the County Court, had no evidence of the facts by which the Chronister judgment could be shown to be fraudulent, that the right of rescission did not exist. This position is not well taken. The vendor desiring to rescind must do it within a reasonable time after the discovery of the fraud. This does not refer to the knowledge of the fraud he must possess, but the time he must take action. If the vendor is compelled to wait until he could procure the evidence of the fraud before he could rescind, he would as a rule be unable to accomplish the desired result. The evidence of the fraud is not easily obtained, and frequently must be obtained from those who are guilty of committing it. Information concerning fraudulent conduct is not usually voluntarily given. Under such a rule as contended for by appellees the evidence of the fraud could not be obtained until the trial of the case had taken place. Appellant had no notice or knowledge of Fristoe's fraud upon it until the 27th day of December, 1896, when action was immediately taken, rescinding the contract for the sale of the flour, and demanding the possession thereof of the assignee, which was certainly within a reasonable time after the knowledge of the fraud was received by appellant. The fraud had been committed at this time, and the evidence of the fraud then existed. What it was at that time was not known to any one but Chronister and Fristoe until it was disclosed on the trial of the case of Chronister v. Anderson, assignee, reported in 73 Ill. App. 524. The action of appellant in declaring the contract for the sale of the flour rescinded and demanding the possession thereof of the assignee, was not premature.

When appellant elected to disaffirm the contract for the sale of the flour and reclaim it, because the purchase was fraudulent, he invoked a legal right that he possessed and had a right to pursue. After he had taken this action Chronister filed a petition in the County Court asking to have the levy of his execution against Fristoe declared a first lien. To resist this the honest creditors of Fristoe, includ-

ing appellant, joined, insisting that the execution and levy as to them was fraudulent and void. In this insistence they were sustained, and the execution and levy were declared fraudulent and void by the court.

This action of the court would enable appellant to reclaim his property and the others to secure the remaining property to be applied on their claims.

It is urged by the appellees that the appellant is seeking a preference in the distribution of the funds rescued from the levy of the fraudulent execution in favor of Chronister. Appellant is not asking this. It is asserting its legal right to its property, the title of which never passed to Fristoe or the assignee, and the proceeds of which are now in the hands of the assignee. If Fristoe had no right to this property, his assignee, Anderson, never acquired any title to it. The assignee took no greater interest or better title to the property than Fristoe possessed. Davis, Carey & Co. v. Chicago Dock Co., 129 Ill. 180; O'Hara v. Jones, 46 Ill. 292.

The rule which prevails in equity—that when a creditor has, through the instrumentalities of a court of equity, sought out and discovered property which he had been unable before to discover and seize, upon execution at law, that he becomes entitled to a preference over other creditors to have his judgment paid first—does not apply to the assignment law of this State for the benefit of creditors. If only one of Fristoe's creditors had resisted Chronister's petition to have his execution and the levy thereof declared a first lien on the estate of the insolvent, and had been successful, he would not have been entitled to a preference over the other creditors to have his claim satisfied first. He would have been entitled to be reimbursed his expenses, and the funds rescued would be distributed *pro rata* among the creditors. The parties resisting Chronister's claim had a common purpose in view—to have the execution and levy under which he was claiming the property declared fraudulent and void—whether creditors, lienholders or owners—not their right to, or the disposition or distribution of the property. His action in that proceeding does not prevent him from maintaining this suit.

The assignee took the flour in controversy under the assignment, and after appellant had demanded the possession of it, and over appellant's protest sold it, and has the money received for it in his hands. That he could not have maintained replevin for the property against the assignee is well settled, but may present his claim by petition to the County Court, as appellant has done in this case. Hanchett v. Waterbury, 115 Ill. 220; Frydendall v. Baldwin et al., 103 Ill. 325.

We do not think appellant waived his right to maintain this proceeding by waiting a few months, until the case of Chronister v. Anderson was disposed of, which settled the question as to whether the judgment and execution of Chronister against Fristoe was void or not.

This case is reversed and remanded, with directions to the court below to enter an order directing the assignee to pay appellant $546.11, the net proceeds of all the flour, and its costs in this proceeding.