CHRISTIAN BOLLNOW *et al.*

*v.*

ALZBETA NOVACEK *et al.*

*Opinion filed February 19, 1900—Rehearing denied April 5, 1900.*

1. CONTRACTS—*a contract must be rescinded in toto or not at all.* A party cannot be permitted to affirm a contract of sale in part and rescind it as to the residue.

2. SAME—*when right of rescission is waived.* The right to rescind a contract for the exchange of properties upon the ground of the failure of one party to perform his agreement to cure certain defects in his title shown by his abstract, is waived where the other party, after entering upon the property and with full knowledge that the defects had not been cured, grants a perpetual right of way therein, thus putting it out of his power to return the property in the condition he found it.

APPEAL from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

M. B. MOAK, for appellants.

JAMES FRAKE, JAMES STORKAN, and C. ARCH WILLIAMS, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The appellees, Alzbeta Novacek and Joseph Novacek, her husband, brought their bill in equity in the circuit court of Cook county against the appellants, Christian Bollnow and Dorothea, his wife, and one Otto Kubin, to rescind a certain alleged contract for the exchange of certain real and personal property, and to cancel certain deeds of conveyance for the exchange of said real estate, a certain bill of sale for the transfer of personal property and a certain note and mortgage of complainants, all of which said instruments had been duly executed and delivered in escrow to said Kubin; also for the cancellation of a declaration of ownership, and the record thereof, which declaration Bollnow had placed on record; also to

compel the surrender of the possession by the Bollnows of the premises (a house and certain lots in Chicago) which the Bollnows had received from the complainants in exchange for a farm and certain personal property, consisting of live stock, farm implements and produce of the Bollnows. After answering, the defendant Christian Bollnow filed his cross-bill to enjoin the complainants from interfering with his possession of the premises which he had received in the exchange, and to compel delivery to him of complainants' deed of said premises and the note and mortgage, which had been delivered in escrow to said Kubin. The complainants, and others named as defendants to the cross-bill, including the Indiana Pipe Line and Refining Company, which company had been made a party, answered, and the said company also filed its cross-bill, which was also answered. Replications having been filed, the cause was referred to the master, and upon his report a decree was entered as prayed in the bill, also dismissing Bollnow's cross-bill, and requiring him to surrender to the complainants the possession of the premises occupied by him, and that there should be an accounting.

The evidence showed that the Novaceks lived in Chicago on one of the several lots in controversy, all owned by Alzbeta Novacek, and that the Bollnows lived in the State of Indiana on a farm of one hundred and four acres, which farm, and the live stock, produce and farm implements, also in controversy, were owned by Christian Bollnow; that a real estate agent in Chicago, learning that the Novaceks desired to exchange their property for a farm, informed them that Bollnow desired to dispose of his farm, whereupon, by agreement between the agent and Alzbeta Novacek and her husband, Joseph Novacek, the latter went with the agent to Indiana, looked at the farm, was satisfied with it and discussed with Bollnow the proposition of an exchange of properties. Bollnow returned with him and the agent to Chicago to examine

the Chicago property, where he and Alzbeta agreed pro-
visionally upon the proposition of exchange. The farm,
farm implements, produce and stock thereon were treated
as worth $6000, and the house and lots, with a stove and
a few other articles of personal property, $7000. There
was a mortgage on the house and lots of $1300, which
was soon to become due. It was verbally agreed that the
Novaceks should pay Bollnow $300 and convey to him
the house and lots, subject to the mortgage of $1300, in
exchange for the farm, farm produce, implements and
stock which Bollnow was to convey to them. It was also
agreed between the parties that Bollnow was to return
to his home in Indiana, and, after consulting his wife,
should write to the Novaceks his final conclusion as to
the proposed trade, and the parties were to submit their
papers to the attorney of the Novaceks before passing
title. Bollnow did so return, and afterwards, on Novem-
ber 13, 1895, only a few days after their first meeting,
wrote, signed, and sent by mail to the Novaceks from
his home in Indiana, this letter: "I wish to let you know
that I am willing to trade with you if you leave the plank
and the large stove as it stands; also the large dog in
the place. If you are willing to do so, get your papers
as soon as possible and let me know immediately, so I
can get my papers." Four days later, after the receipt
of this letter, Novacek and his daughter arrived at the
farm and stated that they had already packed up their
effects, and that appellants should hurry and pack up
if they wanted to trade. Novacek returned to Chicago,
leaving his daughter, who, after assisting appellants to
pack up their effects, remained in charge of the farm and
to care for the stock until her parents should arrive, and
the Bollnows, having hired a car and loaded their effects,
moved to Chicago, where, on November 20, they were
met and were taken by the Novaceks to their home, the
house in controversy, where they found the household
goods of the Novaceks packed, in part, for removal. The

184—30

next day the parties went to the office of James Storkan, attorney for the Novaceks, to complete the transaction. Bollnow presented an abstract of his title to the farm, which Storkan, after examination, on the following day pronounced insufficient to show a good title in Bollnow, and handed the abstract back to Bollnow with a written opinion, to the effect that the title was good with certain exceptions, which were pointed out. Bollnow replied that his title was good and that he would return the papers to his lawyer in Indiana to "fix up." There is much conflict in the evidence as to what was said in the office of Storkan, or between the parties at any time, respecting Bollnow's title or the method by which it should be manifested to the Novaceks, but it clearly appears that Bollnow did present an abstract to Storkan and repeatedly said to the Novaceks and to Storkan that his title was good; that he had "lived on the land twenty-four years and no one had ever bothered him." It does not appear from the evidence that anything was ever said between the parties as to the nature of Mrs. Novacek's title to the house and lots, but it seems to have been assumed by the parties, without inquiry, that her title was good. The evidence shows also that after Storkan objected to Bollnow's title as shown by his abstract, Bollnow said to Alzbeta Novacek that his household goods had not yet been unloaded from the car, and that rather than have any trouble about the trade he would send them back and go back to the farm; but to this she objected, and said to Bollnow that he was all right and should stay where he was, on the place in Chicago, and they (the Novaceks) would go to the farm; that the lawyers only wanted to make some money.

As both parties desired to effect the change at once, it was, at the suggestion of Storkan, finally agreed that the deeds and other papers required to make the exchange should be executed and delivered in escrow to said Otto Kubin, and that each of the parties should enter into

possession of the property contracted for, and this was done. It is uncertain from the evidence what the precise conditions were upon which Kubin was to hold the papers or to finally deliver them to the respective parties. There was testimony to the effect that Bollnow was to perfect his title, so that his abstract would show a good merchantable title in him satisfactory to Storkan, and it is doubtless true that Storkan so insisted and so understood the conclusion reached; still we are satisfied that at the same time Bollnow informed him and Alzbeta Novacek that some of the defects appearing from the abstract were cured by his long and undisputed possession and claim of ownership of more than twenty-four years, and that Bollnow did not agree that all of the defects pointed out by Storkan should be perfected of record and shown upon the abstract to the satisfaction of Storkan, as a condition precedent to the passing of title by the delivery of the title papers. Bollnow was a German and the Novaceks were Bohemians, and neither could speak or understand the language of the other, but did speak and understand imperfectly the English language. Bollnow had no counsel in the transaction, and while the evidence shows no lack of good faith on the part of Novacek's counsel, the evidence does not warrant the finding that possession was exchanged and the deeds executed and delivered to Kubin to be held by him upon the conditions now insisted upon by the Novaceks, but only upon the condition, in substance, that Bollnow was to convey a good title, which, if not fully shown by abstracts of the record title, would be sustained by the Statute of Limitations. The Novaceks did not have the $300 to pay Bollnow and sought to borrow it from a firm of which Storkan was a member, but the loan was refused, and Bollnow agreed to take Novacek's note for the amount, secured by a mortgage on the farm. This note and mortgage, and a warranty deed from the Novaceks to Bollnow for the Chicago property, and a warranty deed from the Boll-

nows for the farm and a bill of sale of the personal property, were the papers placed in the hands of Kubin.

No time was agreed upon in which the defects shown by the abstract should be cured, but Storkan informed the parties that it would take some time, as it might become necessary to take proceedings in a court of record. Bollnow sent the abstract, and Storkan's written objections thereto, to his attorneys in Indiana and went several times to see them, endeavoring to have the defects pointed out by Storkan cured, and succeeded in curing many but not all of them. The Novaceks had taken possession of the farm, horses, cattle, farm implements, grain and other produce in November, 1895, and Bollnow from the same time remained in possession of the Chicago property, each of the parties managing and dealing with the property as owner. Bollnow paid the interest on the $1300 encumbrance on the Chicago property, which, by the terms of the deed to him, he assumed, and also paid all taxes and assessments on the property. Bollnow testified that he had several times demanded the delivery to him of said deed, while Storkan and others testified that Bollnow repeatedly promised to have his title perfected and the abstract corrected according to his requests. As stated, some of the defects were cured, but the title as shown by the abstract was still unsatisfactory to Storkan, and in November, 1896, Bollnow and Mrs. Novacek met in Storkan's office, where Storkan informed Bollnow that Mrs. Novacek did not want to wait any longer for him to furnish an abstract showing that he had cured the defects, and that he could not pass the title as it was, and afterward, on December 9, notified him in writing that Mrs. Novacek had had the title examined by other attorneys and that their opinion was the same as his own, and that she would not make the trade because his title was not accepted; that she would return possession of the farm and demanded return of the premises occupied by him. Nothing more appears to

have been done until in January, 1897, when a formal de-
mand in writing for the premises was served on Bollnow,
and soon afterward this suit was instituted.  No offer to
return the live stock and other personal property was
shown, and it does not appear what its condition was, or
what disposition, if any, had been made of it.

In November, 1896, the Novaceks, while in possession
of the farm and knowing that their attorney was still
objecting to the title as shown by the abstract, were ap-
plied to by an agent of the Indiana Pipe Line and Refin-
ing Company for a right of way across said farm.  They
represented themselves to the agent as owners of the
farm, and for the consideration of $10, which the agent
paid them, executed under their hands and seals and duly
acknowledged a written instrument dated November 10,
1896, granting to said "company," (using the language of
the instrument) "its successors and assigns, the right of
way to build, maintain, operate, use and remove a tele-
graph or telephone line on, over and through my land,"
describing it, being the farm in controversy, and in pur-
suance of such grant the company put up its poles and
wire, and constructed and used, and is still using, said
telegraph line through said farm as a part of its line.  It
also appeared that during the pendency of the suit, and
before the close of the evidence taken before the master,
Bollnow succeeded in removing the substantial defects
in his title appearing from the abstract, and showed, by
documentary proof, title good in him, free from substan-
tial defects, and during the same time the Novaceks ten-
dered to him the $10 received from the pipe line company
for the right of way through the farm.  This documentary
proof was objected to by the complainants because it had
not been exhibited to them or their attorney before the
filing of the bill.  We are of the opinion, however, that
it was proper, as tending to prove the representation of
Bollnow that his title was good when the trade was made

and at the time the bill was filed, and that he had performed the conditions of his contract.

Our conclusion is that the decree cannot be sustained for two reasons: First, because the evidence, when the whole of it is fully and fairly considered, does not sustain the material allegations of the bill as to the terms of the contract under which the parties exchanged possession and delivered in escrow to Kubin the title papers; and second, because the Novaceks, having full knowledge of all the alleged defects and that Bollnow had not furnished to Storkan an abstract showing to his satisfaction that they had been cured, permanently encumbered the property by granting to the pipe line company, its, successors and assigns, a perpetual easement in it, thus showing an intention to waive such defects of title, or, at least, to waive any right of rescission they may have had and to ratify and confirm the exchange of the properties as a completed act, and by so doing the Novaceks had put it out of their power to restore to Bollnow the farm as they had received it. We said in *Harzfeld* v. *Converse*, 105 Ill. 534 (on p. 538): "The rule of law is as well settled as any can be, that a party will not be permitted to affirm a contract in part and rescind as to the residue. If he rescinds at all he must do so *in toto*. The opposite party must be placed in as good a position as he was before the sale, by a return of the property purchased, unless it is entirely worthless." Bollnow was not bound to receive back the farm encumbered by the right of way and the easement granted by the Novaceks, as provided by the decree, any more than he would have been had a railroad been constructed through it under a similar grant.

We are satisfied that the Novaceks are entitled to no relief in equity, and if it should turn out they are injured by any defect in Bollnow's title, they must, under all of the facts in this case, be remitted to their remedy at law upon the covenants of Bollnow's deed of general

warranty.    Bollnow was entitled, upon his cross-bill, to have delivered to him the warranty deed of Alzbeta and Joseph Novacek to the Chicago property; also their note for $300 and their mortgage on the farm securing it, and it should be so decreed.    Of course, his deed and bill of sale should also be delivered to Alzbeta Novacek.

The decree is reversed and the cause remanded, with directions to enter a decree in accordance with the views we have expressed.    *Reversed and remanded.*