ILLINOIS STATE BAR ASSOCIATION MUTUAL INSURANCE COMPANY *et al.*, Plaintiffs-Appellants, v. COREGIS INSURANCE COMPANY, Defendant-Appellee.

First District (4th Division)    No. 1—03—2283

Opinion filed December 16, 2004.

Pretzel & Stouffer, Chtrd. of Chicago (Robert Marc Chemers and Andrew G. Witik, of counsel), for appellants.

Bollinger, Ruberry & Garvey, of Chicago (Edward F. Ruberry, Jeffrey A. Goldwater, and Anthony G. Barone, of counsel), for appellee.

JUSTICE QUINN delivered the opinion of the court:
Plaintiffs Munday & Nathan, an Illinois law firm, and their profes-

sional malpractice insurer, Illinois Bar Association Mutual Insurance Company (ISBA Insurance), appeal from the judgment of the circuit court, which granted summary judgment for defendant Coregis Insurance Company (Coregis). On appeal, plaintiffs argue that the circuit court erred in finding that an insurance policy issued by Coregis was void *ab initio* due to a material misrepresentation made by its insured in applying for the policy. For the following reasons, we find that, while the policy was not void *ab initio*, but, instead, merely voidable, Coregis did not waive its right to void the policy based upon the insured's material misrepresentation. Therefore, we affirm the judgment of the circuit court.

## BACKGROUND

In 1994, attorneys Brian Hubka and Thomas Nathan, a named partner in the law firm of Munday & Nathan (Munday), entered into an agreement to jointly represent Cherry Maxwell in a personal injury lawsuit that arose out of an automobile accident in 1991. In April 1994, Hubka and Nathan reached a settlement agreement on behalf of Ms. Maxwell in the amount of $225,000. Instead of disbursing the settlement proceeds to Ms. Maxwell, Hubka converted them for his own use. On February 22, 1995, the Illinois Attorney Registration and Disciplinary Commission (ARDC) filed a complaint against Hubka alleging, *inter alia*, that he converted client funds. On May 4, 1995, Hubka admitted, in his answer to the ARDC complaint, that he never disbursed the settlement funds to Ms. Maxwell.

Five months after answering the ARDC complaint, Hubka submitted an application to renew his lawyers professional liability insurance policy with Coregis Insurance Company (Coregis), with which he had been insured since 1993. In his application, despite answering the pending ARDC charges against him by admitting his failure to disburse the settlement funds to Ms. Maxwell, Hubka stated that he was not aware of any "circumstance, act, error, omission or personal injury which may result in a claim" against him. After receiving his application, Coregis renewed the policy for the period of November 7, 1995, to November 7, 1996.

On January 20, 1996, Maxwell filed suit against Hubka, Nathan, and Munday for conversion, legal malpractice, breach of fiduciary duty, and breach of contract. Nathan and Munday tendered their defense to ISBA Insurance, their professional liability insurer.

On August 8, 1996, the Illinois Supreme Court entered an order

suspending Hubka from the practice of law.[1] On September 4, 1996, after learning of his suspension, Coregis informed Hubka that it would not renew the policy, which was to expire on November 7, 1996.

On September 30, 1996, Hubka tendered his defense against Ms. Maxwell's lawsuit to Coregis. Three days later, Coregis sent a letter to Hubka stating that it had received notice of his tender and informing him that it had assigned Michael Bruck (Bruck) of Quinlan & Crisham to defend him. In the letter, Coregis also highlighted certain exclusions contained in the policy that it felt were or may become relevant to the issue of whether it would provide a defense for Hubka, and reserved its right to refuse to defend or indemnify him if it determined that any of those exclusions were applicable. Specifically, the letter stated, in pertinent part:

> "Also, please refer to the **EXCLUSIONS** section of the Policy, which states, in pertinent part:
>
> > This policy does not apply to:
> > \* \* \*
> > J. any CLAIM arising out of conversion, misappropriation or improper commingling of client funds.
> > \* \* \*
>
> Count I of Ms. Maxwell's Complaint alleges conversion of approximately $200,000 of settlement proceeds. Count II of the Complaint sets forth a cause of action based in legal malpractice. Count III alleges breach of fiduciary duty. Finally, count IV alleges breach of contract. All four counts of Ms. Maxwell's Complaint revolve around the same allegations of conversion. While we do not place any credence in Ms. Maxwell's allegations, we must reserve our rights with respect to same. Therefore, based on the aforementioned exclusions, if it is determined that any of your acts gave rise to conversion of settlement funds, please be advised that we will neither defend nor indemnify you for those acts, errors, or omissions.
>
> In addition, I call your attention to the **EXCLUSIONS** section of the Policy which states that the following is also excluded:
>
> > A. any CLAIM that results in a final adjudication against any INSURED that an INSURED has committed any criminal, dishonest, fraudulent or malicious acts, errors, omissions or PERSONAL INJURIES.
>
> This exclusion does not apply to any INSURED who is not so adjudged[.]
>
> Once again, all four counts of Ms. Maxwell's Complaint are based upon the same set of allegations that you converted her settlement

---

[1]He was later disbarred on November 26, 1996.

funds. We do not believe that there is any credibility to Ms. Maxwell's assertions, but we must reserve our rights with respect to the assertions. Therefore, if it is adjudged that you committed any criminal, dishonest, fraudulent or malicious acts, errors or omissions, including, but not limited to conversion, be advised that we will not indemnify you with respect to same.

Finally, I again call your attention to the **EXCLUSIONS** section of the Policy which states that the following is excluded from coverage:

B. any CLAIM arising out of any act, error, omission or PERSONAL INJURY occurring prior to the effective date of this policy if any INSURED knew or could have reasonably foreseen that such act, error, omission or PERSONAL INJURY might be expected to be the basis of a CLAIM or suit[.]

Ms. Maxwell's Complaint alleges that Ms. Maxwell's personal injury case was settled in April, 1994, for the amount of $225,000. The effective date of the Policy is November 7, 1995. Therefore, if it is determined that on or prior to November 7, 1995, you either knew or could have reasonably foreseen that Ms. Maxwell would bring a claim based upon your own acts, errors, or omissions concerning her personal injury case, please be advised that we will not defend or indemnify you with respect to same.

In order to protect your interests, we shall defend this claim on your behalf, pursuant to this Reservation of Rights. If it should develop that you are not covered by the Policy, you understand that by agreeing to defend you under this Reservation of Rights, the Company does not waive any right or defenses it may have available, nor does it waive its right to deny coverage at a later date. We also reserve the right to withdraw from the defense of this matter should our investigation determine that there is no coverage." (Emphasis in original.)

Though it had previously informed Hubka that it would not renew the policy, on November 4, 1996, Coregis offered Hubka the option to purchase an "Extended Reporting Endorsement," which extended for one year the time period in which Hubka could report a claim to Coregis based upon any act, error, or omission that occurred before the policy expired.

On February 10, 1997, Bruck drafted a letter to Hubka explaining that there was a potential conflict between Hubka's and Coregis's interests in the resolution of Ms. Maxwell's lawsuit against Hubka. After explaining this potential conflict, the letter detailed Hubka's right to independent counsel and suggested that he "consult with an attorney of [his] own choosing in connection with the matters" in the letter. The letter also gave Hubka the option of waiving any potential

conflict and fully consenting to Bruck's continued representation. Though there is no signed letter in the record, Bruck stated in an affidavit that he "specifically discussed" with Hubka "a potential conflict of interest due to the fact that we had been retained by Coregis Insurance Company and advised Mr. Hubka that he may have the right to obtain independent counsel to represent him in the Maxwell matter." Bruck also averred that "before and after the letter was sent, Brian Hubka indicated that he understood the issues, waived any potential conflict and consented to" his representation. Hubka stated in his own affidavit that he never received this letter, discussed any potential conflict with Bruck, or waived any potential conflict.

On April 16, 1997, Ms. Maxwell moved for summary judgment against Hubka on count II (legal malpractice) of her amended complaint. On August 14, 1997, Coregis filed a complaint for declaratory judgment against Hubka and Ms. Maxwell. In its complaint, Coregis sought a declaration that it owed no duty to defend or indemnify Hubka in Ms. Maxwell's lawsuit based upon two policy exclusions: (1) exclusion J, which excluded coverage for "any claim arising out of conversion, misappropriation or improper commingling of client funds" and (2) exclusion B, which denied coverage for claims arising out of acts, errors, or omissions that occurred prior to the policy's inception date which the insured knew or could reasonably have foreseen would become the basis of a claim or lawsuit. Neither Nathan nor Munday was named as a defendant in Coregis's declaratory judgment complaint.

On August 15, 1997, the day after Coregis filed its declaratory judgment complaint, the trial court granted Ms. Maxwell's motion for summary judgment and entered judgment against Hubka in the amount of $213,414.75. On January 2, 1998, Ms. Maxwell moved for summary judgment against Nathan and Munday based upon a theory of joint venture liability. On January 12, 1998, Coregis sought leave to amend its complaint for declaratory judgment to add three more potential claimants and a count of rescission.

On June 30, 1998, the trial court granted Ms. Maxwell's motion for summary judgment against Nathan and Munday. ISBA Insurance, as both Nathan's and Munday's insurer, paid Ms. Maxwell's judgment against them in its entirety.

On December 6, 1998, Nathan and Munday filed a counterclaim against Hubka alleging breach of contract, breach of fiduciary duty, and conversion. In September 1999, Coregis filed a motion for summary judgment on its complaint for declaratory judgment. On April 18, 2000, the trial court granted Nathan and Munday's motion for summary judgment against Hubka as to count II (breach of fiduciary

duty). Meanwhile, in either June or July 2000, the trial court granted Coregis's motion for summary judgment on its complaint for declaratory judgment against Hubka, Maxwell, and numerous other claimants.[2] In September 2000, the circuit court denied Nathan and Munday's attempt to intervene in Coregis's declaratory judgment action against Hubka, Maxwell, and the other claimants.

On October 31, 2000, ISBA Insurance and Munday filed a complaint for declaratory judgment against Coregis. In their complaint, plaintiffs sought the following declarations: (1) Coregis waived its right to rescind Hubka's policy; (2) Coregis is estopped from raising any policy defense because it failed to inform Hubka that a conflict of interest existed in its representation of Hubka during Ms. Maxwell's lawsuit; and (3) Coregis had a duty to indemnify Hubka for Ms. Maxwell's judgment against him. On December 21, 2000, Coregis sought to have both its and plaintiffs' complaints for declaratory judgment consolidated, but its motion was denied.

Both plaintiffs and Coregis filed cross-motions for summary judgment on plaintiffs' complaint for declaratory judgment. The circuit court granted Coregis's motion, finding that, because Hubka had made a material misstatement on his application for renewal in October 1995, the policy was void *ab initio*. The court further stated:

"Since the policy was void, there is no need for this Court to consider the parties' arguments regarding any alleged conflict of interest, Coregis'[s] reservation of rights, Coregis'[s] attempt to rescind the policy, or whether the exclusions within the policy preclude coverage."

Plaintiffs filed a timely notice of appeal.[3]

## ANALYSIS

Plaintiffs argue that the circuit court erred in granting Coregis's motion for summary judgment. Initially, plaintiffs contend that the court erred in finding that the policy was void *ab initio* and that Core-

---

[2]The circuit court's order granting summary judgment does not appear in the record, but Coregis's brief states that the order was issued either in June, per page 21, or in July, per page 8. ISBA Insurance does not contest these assertions or raise any issue regarding whether the entry of this order affects any issue raised here on appeal.

[3]Though the circuit court found, based upon this court's holding in *American Country Insurance Co. v. Williams*, 339 Ill. App. 3d 835, 791 N.E.2d 1268 (2003), that ISBA Insurance, as Munday's insurer, had standing to bring this declaratory judgment action against Coregis, neither party has raised the issue of ISBA Insurance's standing here on appeal. Consequently, because this issue is not before us, we express no opinion as to the propriety of ISBA Insurance's standing in the present action.

gis waived its right to rescind the policy when it did not do so promptly upon its discovery of Hubka's material misstatement in his policy renewal application. Plaintiffs also argue that Coregis should be estopped from asserting any policy defenses because it failed to inform Hubka or obtain a waiver of a potential conflict of interest in its representation of him in the lawsuit filed by Ms. Maxwell.

Coregis argues that the circuit court properly granted its motion for summary judgment because Hubka's material misrepresentation rendered the policy void *ab initio*. Coregis contends that because the policy was void, whether it informed Hubka or obtained a waiver of any potential conflict is irrelevant. Coregis further argues that, even if the policy was not void *ab initio*, it did not waive its right to rescind the policy.

Summary judgement is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2000). The purpose of summary judgment is not to try a question of fact, but to determine if one exists. *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 462, 786 N.E.2d 1010 (2003). The standard of review of an order granting summary judgment is *de novo*. *Morris v. Margulis*, 197 Ill. 2d 28, 35, 754 N.E.2d 314 (2001). Because we review the grant of summary judgment *de novo*, we may affirm the circuit court's decision on any ground in the record, regardless of whether the court relied on that ground or whether the court's reasoning was correct. See *Pepper Construction Co. v. Transcontinental Insurance Co.*, 285 Ill. App. 3d 573, 576, 673 N.E.2d 1128 (1996).

## I. EFFECT OF HUBKA'S MISREPRESENTATION ON INSURANCE POLICY

■ Section 154 of the Illinois Insurance Code sets forth criteria that must be met before an insurer can rescind a policy based upon a misrepresentation by an insured:

> "No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance *** shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company." 215 ILCS 5/154 (West 1998).

Both parties agree that, in his application to renew his policy with

Coregis in 1995, Hubka made a material misrepresentation which qualified as a basis to "avoid or defeat the policy" under section 154. The first question is what effect this misrepresentation had upon the policy.

Whether a defect in the formation of a contract renders that contract void *ab initio* or merely voidable depends upon the nature of that defect. For instance, if the subject matter of a contract is illegal, that contract is void *ab initio*. See *Tomm's Redemption, Inc. v. Park*, 333 Ill. App. 3d 1003, 1009, 777 N.E.2d 522 (2002); *Hall v. Montaleone*, 38 Ill. App. 3d 591, 592, 348 N.E.2d 196 (1976) (stating that gambling contracts are absolutely void and unenforceable by reason of public policy). So too are contracts where one of the contracting parties exceeded its authority in entering into the pact. See *Grassini v. Du Page Township*, 279 Ill. App. 3d 614, 620, 655 N.E.2d 860 (1996) (stating that where a township exceeds its statutory authority in entering into a contract, the township's act is *ultra vires* and the resulting contract is void *ab initio*).

Other defects, however, simply render the contract voidable. See, *e.g.*, *Cain v. Cross*, 293 Ill. App. 3d 255, 258, 687 N.E.2d 1141 (1997) (stating that a "contract alleged to be invalid on the basis of the statute of frauds is merely voidable, not void," and that the "contract may be enforced unless the defendant sets up the statute as a defense"); *Fletcher v. Marshall*, 260 Ill. App. 3d 673, 675, 632 N.E.2d 1105 (1994) (recognizing that a "contract of a minor is not void *ab initio*, but merely voidable at the election of the minor upon his attaining majority"); *Lyons v. Christ Episcopal Church*, 71 Ill. App. 3d 257, 260, 389 N.E.2d 623 (1979) (stating that, generally, "fraudulent misrepresentation in the sale of real estate is that the contract is merely voidable, not void, at the option of the injured party").

■ The difference between a contract that is void *ab initio* and one that is merely voidable is that "a voidable contract can be ratified and enforced by the obligor, although not by the wrongdoer, while the void contract cannot be." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 234 Ill. App. 3d 1017, 1023, 601 N.E.2d 803 (1992), citing Restatement of Contracts § 475, Comment *b* (1932), *rev'd, Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 619 N.E.2d 732 (1993); see also *Smith v. Hunter*, 171 Ill. App. 30, 36 (1912) (stating where "a contract is void *ab initio*, or where it becomes void by the terms and conditions therein expressed and agreed to by the parties, no action can be maintained thereon by either party"). In other words, a contract that is void *ab initio* is treated as though it never existed; neither party can choose to ratify the contract by simply waiving its right to assert the defect. On the other hand, if a contract is merely

voidable, a party can either opt to void the contract based upon that defect or choose, instead, to waive that defect and ratify the contract despite it.

In this case, if the material misrepresentation by Hubka rendered the policy void *ab initio*, Coregis could not waive its right to rescind the policy (because, legally speaking, the policy never existed), and it was, therefore, under no obligation to inform Hubka of any potential conflict. If, however, the policy was merely voidable, Coregis could, through its words and conduct, waive its right to rescission. To determine whether Coregis waived its right to rescission, we must look to the nature of the right to rescind a contract.

■ " '[R]escission' is the cancelling of a contract so as to restore the parties to their initial status." *Horan v. Blowitz*, 13 Ill. 2d 126, 132, 148 N.E.2d 445 (1958). Where a contract is rescinded, the rights of the parties under that contract are vitiated or invalidated. *Puskar v. Hughes*, 179 Ill. App. 3d 522, 528, 533 N.E.2d 962 (1989). It is " 'an equitable doctrine, and a party seeking rescission must restore the other party to the status quo existing at the time the contract was made.' " *International Insurance Co. v. Sargent & Lundy*, 242 Ill. App. 3d 614, 628, 609 N.E.2d 842 (1993), quoting *Puskar*, 179 Ill. App. 3d at 528. A court of equity may grant the remedy of rescission where there has been some fraud in the making of a contract, such as an untrue statement or the concealment of a material fact, or where one party enters into a contract reasonably relying on the other party's innocent misrepresentation of a material fact. *Puskar*, 179 Ill. App. 3d at 528.

Generally speaking, "[o]ne seeking to rescind a transaction on the ground of fraud or misrepresentation must elect to do so promptly after learning of the fraud or misrepresentation, must announce his purpose and must adhere to it." *Mollihan v. Stephany*, 35 Ill. App. 3d 101, 103, 340 N.E.2d 627 (1975); see also *Vincent v. Vits*, 208 Ill. App. 3d 1, 7, 566 N.E.2d 818 (1991) (stating that the "right of rescission must be exercised promptly"). An unreasonable delay in taking the necessary steps to set aside a fraudulent contract will have the effect of affirming it. See *White Brass Castings Co. v. Union Metal Manufacturing Co.*, 135 Ill. App. 32 (1907).

Although the parties failed to cite, and this court's research did not find, any cases that deal specifically with the issue of whether an insurer can waive its right to rescind under section 154, there are cases which state that an insurer's right to rescission is generally waivable. See *Dickerson v. Northwestern Mutual Life Insurance Co.*, 200 Ill. 270, 277, 65 N.E. 694 (1902) (recognizing, in the context of an insurance policy, that "one, who desires to rescind a contract for fraud, must act promptly and tender back what he has received under the

contract, and if he remains silent after discovering the fraud, he waives his right to a rescission"); *Mollihan*, 35 Ill. App. 3d at 104 (finding that the "lack of evidence showing when State Farm learned of the alleged misrepresentation preclude[d] the granting of summary judgment" because that "evidence would be material to show whether State Farm acted promptly in rescinding the policy after it acquired this information"); see also *Casualty Insurance Co. v. E.W. Corrigan Construction Co.*, 247 Ill. App. 3d 326, 331-32, 617 N.E.2d 228 (1993) (explaining that the court in *Mollihan* held "that the insurance company did not waive the defense of rescission because no intent to relinquish the defense could be implied from the conduct of the insurer or its agent," and distinguishing *Mollihan* because the "issue of whether the insurer has waived a defense is not analogous to whether it has received adequate notice of an occurrence").

Additionally, courts have found that a party's right to rescind a contract is subject to waiver in other contexts. See *American Sanitary Rag Co. v. United States Hoffman Machinery Corp.*, 320 Ill. App. 556, 560, 51 N.E.2d 809 (1943) (stating, in the context of the sale of a defective good, "if a purchaser desires to rescind a contract of sale and return the article purchased, he must offer it back as soon as he discovers the breach, or after he has had reasonable time for examination, and he waives the right to rescind by continuing to use the article for a longer time than is reasonable for a trial"); *Bollnow v. Novacek*, 184 Ill. 463, 471, 56 N.E. 801 (1900) (finding that buyer of defective title to property waived its right to rescission because the buyer, while his attorney was objecting to the defective title, granted an easement in the property); *O'Donnell & Duer Bavarian Brewing Co. v. Farrar*, 163 Ill. 471, 475, 45 N.E. 283 (1896) (stating "a party attempting to declare a rescission of the contract, who afterwards exercises acts of ownership over the subject matter of the contract, treating it as his own, will be held to have waived his right to rescind"); *Phenix Milling Co. v. Anderson*, 78 Ill. App. 253 (1898) (stating that a seller, who rescinded a sale upon discovering that the buyer had engaged in a scheme to defraud creditors, did not waive the right to rescind the contract of sale by waiting several months before bringing suit). Thus, it appears that at common law, a contracting party's right to rescind the contract was waivable if not exercised promptly.

However, by enacting section 154 and limiting an insurer's right to rescind a policy based upon an insured's misstatement, the legislature departed from the common law rules regarding this remedy. See *Golden Rule*, 203 Ill. 2d at 464 (stating, "We note that section 154 is representative of statutes which 'are designed to relieve against the rigorous consequences of the common-law rules as to warranties and

misrepresentations concerning insurance, particularly if made in good faith with no intent to deceive and in relation to a matter which does not increase the risk or contribute to the loss' ''), quoting 43 Am. Jur. 2d Insurance § 1034 (1982); see also *Campbell v. Prudential Insurance Co. of America*, 15 Ill. 2d 308, 312, 155 N.E.2d 9 (1958) (explaining common law antecedents to the statute). The next question is whether the legislature, by enacting section 154, not only limited the grounds for rescission, but also changed the nature of that right, *i.e.*, whether that right is waivable.

■ In parsing section 154 of the Insurance Code, our supreme court stated:

> "The statute establishes a two-prong test to be used in situations where insurance policies *may be voided*: the statement must be false and the false statement must have been made with an intent to deceive or must materially affect the acceptance of the risk or hazard assumed by the insurer. [Citations.] Under the statute, therefore, a misrepresentation, even if innocently made, can serve as the basis to void a policy." (Emphasis added.) *Golden Rule*, 203 Ill. 2d at 464.

Nowhere in its analysis of the statute did the supreme court find that a material misrepresentation under section 154 renders a policy void *ab initio*. Instead, the court explained that section 154 "establishes a two-prong test to be used in situations where insurance polices *may be voided*." (Emphasis added.) *Golden Rule*, 203 Ill. 2d at 464. It appears, therefore, that while section 154 did limit the grounds upon which an insurer can rescind a policy based upon a material misrepresentation, it did not change the nature of that right. Therefore, just as it was before section 154 was enacted, a material misrepresentation under section 154, which grants an insurer the right to rescind the policy, renders the policy voidable, not void *ab initio*, and an insurer can waive this right if it does not invoke it promptly. See 215 ILCS 5/154 (West 1998); *Dickerson*, 200 Ill. at 277; *Mollihan*, 35 Ill. App. 3d at 104.[4]

Coregis relies upon *State Farm Insurance Co. v. American Service Insurance Co.*, 332 Ill. App. 3d 31, 773 N.E.2d 666 (2002), to support

---

[4]We do note that the legislature has since spoken as to the outer limit of what constitutes promptness by imposing a one-year time limit within which an insurer must act to void a policy based upon a material misrepresentation under section 154. See 215 ILCS 5/154 (West 1996) (effective June 1, 1996) (stating "[w]ith respect to a policy of insurance ***, a policy or policy renewal shall not be rescinded after the policy has been in effect for one year or one policy term, whichever is less"). Neither party has argued that this amendment is applicable here.

its argument that a material misrepresentation renders a policy void *ab initio*. We find Coregis's reliance to be misplaced.

In *State Farm*, an insurer denied coverage to an insured for a personal injury lawsuit that arose out of an automobile accident (the insured was attempting to teach his 14-year-old how to drive when the accident occurred). *State Farm*, 332 Ill. App. 3d at 34-35. Because the insured had failed to include his 14-year-old son as a potential driver on his insurance application, the insurer, citing a provision in the policy, asserted that this omission was a material misrepresentation which rendered the policy " 'null and void from its inception.' " *State Farm*, 332 Ill. App. 3d at 35. Assignees of the insured filed suit against the insurer, arguing that because the insurer wrongfully denied coverage and failed to either defend the insured under a reservation of rights or seek a declaratory judgment that it owed no duty to defend, the insurer should be estopped from asserting this policy provision as a basis to deny coverage. *State Farm*, 332 Ill. App. 3d at 35-36. The circuit court agreed with the assignees, finding that the personal injury lawsuit was covered under the policy, the insurer had breached its duty to defend by failing to defend under a reservation of rights or seek a declaratory judgment that no such duty existed, and, therefore, the insurer was "estopped from asserting that the insurance policy was void *ab initio* due to a material misrepresentation." *State Farm*, 332 Ill. App. 3d at 36.

The appellate court, however, reversed, finding that the circuit court had acted prematurely in "invoking the estoppel doctrine prior to determining whether [the insured's] insurance policy was in existence at the time of the accident." *State Farm*, 332 Ill. App. 3d at 38. The court stated:

> "[The insurer's] argument that the insurance policy was not in existence at the time of the accident is not a 'policy defense' simply because [the insurer] relies on provisions of the insurance policy in order to support its argument. [The insurer's] rescission defense does not involve a question of policy coverage. Rather, the affirmative defense of rescission raises the issue of whether an insurance policy was in existence. [Citations.]" *State Farm*, 332 Ill. App. 3d at 38.

Because "the doctrine of estoppel is inapplicable in cases where there was no insurance policy in existence at the time of the loss," the court remanded the case "to allow the parties to litigate the issue of rescission in the trial court." *State Farm*, 332 Ill. App. 3d at 38, citing *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 151, 708 N.E.2d 1122 (1999).

*State Farm* does not stand for the proposition that a material

misrepresentation renders a policy void *ab initio*. Any discussion by the court of the phrase "void *ab initio*" was confined solely to the context of the insurer's argument, both in its letter to the insured and in its filings in the circuit court, that the insured's material misrepresentation rendered the policy void *ab initio*. See *State Farm*, 332 Ill. App. 3d at 35-36. We do not read the court's holding in *State Farm* so broadly as to be an endorsement of the insurer's "void *ab initio*" argument. Instead, we read *State Farm* to say that (1) simply embodying the right to rescission in a provision in an insurance policy does not render that right a "policy defense," which is amenable to the estoppel doctrine and (2) whether a policy was properly voided based upon a material misrepresentation must be decided before any issue as to whether the estoppel doctrine applies to bar an insurer from raising a policy defense. See *State Farm*, 332 Ill. App. 3d at 37-38. To the extent that the holding in *State Farm* can be read as finding that a material misrepresentation renders a policy void *ab initio*, we disagree with the holding.[5]

It seems quite clear that, based upon the nature of the right to rescind a contract, the cases under the common law which have found that the right to rescind a contract is a waivable one (see *Dickerson*, 200 Ill. at 277; *Bollnow*, 184 Ill. at 471; *O'Donnell & Duer Bavarian Brewing*, 163 Ill. at 475-76; *Mollihan*, 35 Ill. App. 3d at 104; *American Sanitary Rag Co.*, 320 Ill. App. at 560; *Phenix Milling Co.*, 78 Ill. App. 253), and the supreme court's interpretation of section 154 (see *Golden Rule*, 203 Ill. 2d at 464), a material misrepresentation in an insurance policy merely renders that policy voidable, granting an insurer the option to ratify the policy despite the misrepresentation if it so chooses, but also imposing a duty upon an insurer that chooses instead to void the policy to do so promptly, or risk waiving that right.

## II. WAIVER OF RIGHT TO RESCISSION

Having found that the policy in this case was merely voidable, the next issue is whether Coregis waived its right to rescind the policy.

Waiver is defined as "the voluntary relinquishment of a known right." *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill. App. 3d 452, 463, 654 N.E.2d 1109 (1995). As stated above, the "right of rescission must be exercised promptly." *Vincent*, 208 Ill. App. 3d at 7. An unreasonable delay in taking the necessary steps to set aside a fraudulent contract will have

---

[5]We note that *State Farm* was decided prior to the supreme court's holding in *Golden Rule* interpreting section 154. See *Golden Rule*, 203 Ill. 2d at 464; *State Farm*, 332 Ill. App. 3d at 39.

the effect of affirming it. See *White Brass Castings Co.*, 135 Ill. App. 32.

◼ In the context of policy defenses,[6] an insurer waives its right to enforce a provision of the contract when its words or conduct are inconsistent with its intention to rely on the requirements of the policy. *Twin City Fire Insurance Co. v. Old World Trading Co.*, 266 Ill. App. 3d 1, 11, 639 N.E.2d 584 (1993). For a court to find waiver of a policy defense requires the establishment of those facts that would show that it would be unjust, inequitable, or unconscionable to allow the insurer to assert the defense. *Thompson v. Green Garden Mutual Insurance Co.*, 261 Ill. App. 3d 286, 290, 633 N.E.2d 1327 (1994).

◼ Plaintiffs make much of the fact that Coregis knew in the fall of 1996 that Hubka made a material misrepresentation in his policy renewal application, yet waited over a year before seeking to rescind the policy based upon that material misrepresentation. There is nothing that Coregis did, however, that could reasonably lead Hubka or anyone else to believe that it was waiving its right to rescind the policy.

First, less than a month after Hubka was suspended from the practice of law, Coregis informed him that it would no longer renew the policy.

Second, three days after Hubka notified Coregis of Ms. Maxwell's lawsuit, Coregis sent a letter to Hubka in which it agreed to defend Hubka, but reserved its right to withdraw its defense should it later determine that there was no coverage. In that letter, though the word "rescission" does not appear, Coregis specifically highlighted certain exclusions that it believed could be applicable based upon the allegations contained in Ms. Maxwell's complaint, including "Exclusion B," which denies coverage for "any CLAIM arising out of any act, error, omission or PERSONAL INJURY occurring prior to the effective date of this policy if any INSURED knew or could have reasonably foreseen that such act, error, omission or PERSONAL INJURY might be expected to be the basis of a CLAIM or suit." Coregis's reservation-of-rights letter also explicitly and unequivocally stated:

> "If it should develop that you are not covered by the Policy, you understand that by agreeing to defend you under this Reservation of Rights, the Company does not waive any right or defenses it may have available, nor does it waive its right to deny coverage at a later date. We also reserve the right to withdraw from the defense

---

[6]Having found that an insurer's right to rescission is waivable, we see no reason why the rules concerning the waiver of policy provisions or defenses should not apply with equal force to the waiver of a right to rescission.

of this matter should our investigation determine that there is no coverage."
This reservation-of-rights letter made Hubka aware, within three days of Coregis receiving notice of Ms. Maxwell's lawsuit, that Coregis was not waiving anything.

Third, on August 14, 1997, Coregis filed a complaint for declaratory judgment against Hubka and Ms. Maxwell seeking a declaration that it owed no duty to defend or indemnify Hubka in Ms. Maxwell's lawsuit based upon the nature of her lawsuit (conversion) and because Hubka either knew of the claim or should have known of the claim's potential prior to the policy's inception date. Later, in January 1998, Coregis amended its complaint for declaratory judgment, seeking to rescind the policy based upon Hubka's material misrepresentation in the renewal application.

By defending under a reservation of rights (which was certainly broad enough in scope to encompass the right to rescind the policy), by specifically highlighting those provisions in the policy that it felt abrogated any duty to defend Hubka in Ms. Maxwell's lawsuit against him, and by seeking a declaratory judgment action that it owed no duty to defend, Coregis did exactly what courts have said insurers must do if they want to preserve their right to deny coverage, refuse to defend, or decline to indemnify. See *Employers Insurance*, 186 Ill. 2d at 150 (stating that an "insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend" "has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage").

Furthermore, even if Coregis had filed its declaratory judgment action earlier than it did, the circuit court was certainly under no obligation to (and possibly could not) rule until the underlying lawsuit involving the insured, *i.e.*, Ms. Maxwell's lawsuit against Hubka, was resolved. See *Fremont Compensation Insurance Co. v. Ace-Chicago Great Dane Corp.*, 304 Ill. App. 3d 734, 742, 710 N.E.2d 709 (1999), quoting *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 197, 355 N.E.2d 24 (1976) (stating that a trial court abuses its discretion in granting declaratory relief "where the questions necessary to determine coverage also constitute 'ultimate facts upon which recovery is predicated' in an unresolved suit against the insured arising from the same occurrence giving rise to the claim of coverage"); *Bonnie Owen Realty, Inc. v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 812, 818-19, 670 N.E.2d 1182 (1996) (stating that unless the issues involved in the declaratory judgment action are separable from those in the underlying action, a court must not determine the ultimate question

of the insured's liability because it could subsequently prejudice a party in the underlying action through the doctrine of collateral estoppel). Consequently, we hold that Coregis did not waive its right to rescind the policy based upon Hubka's material misrepresentation.

As previously stated, both parties agree that, in his application to renew his policy with Coregis in 1995, Hubka made a material misrepresentation which qualified as a basis to "avoid or defeat the policy" under section 154. As Coregis did not waive its right to rescind, Coregis properly exercised that right. As Coregis properly rescinded the policy, we need not address whether the estoppel doctrine applies to bar Coregis from raising policy defenses or whether Coregis operated under a conflict of interest which would preclude Coregis from raising policy defenses. See *State Farm*, 332 Ill. App. 3d at 37-38 (stating that whether a policy was properly voided based upon a material misrepresentation must be decided before any issue as to whether the estoppel doctrine applies to bar an insurer from raising a policy defense).

For the aforestated reasons, while we find that the circuit court's ruling that the policy between Hubka and Coregis was void *ab initio* was erroneous, the policy was voidable and Coregis properly exercised its right to rescission based upon Hubka's material misrepresentation. We, therefore, affirm the entry of summary judgment for Coregis.

Affirmed.

REID, P.J., and THEIS, J., concur.