**James T. MANNING, Plaintiff,**

**v.**

**METAL STAMPING CORPORATION, a Foreign Corporation, Defendant.**

**No. 73 C 2534.**

United States District Court, N. D. Illinois, E. D.

July 10, 1975.

Barry J. Freeman, Freeman, Freeman & Atkins, Ltd., Chicago, Ill., for plaintiff.

Richard G. Schultz and Robert Y. Sperling, Foran, Wiss & Schultz, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

KIRKLAND, District Judge.

This matter comes before the Court on motion by defendant for summary judgment on the amended complaint, and on motions by both parties for summary judgment on defendant's amended counterclaim.

This is an action for recovery of commissions arising out of a written agreement. Jurisdiction is based on diversity of citizenship. Plaintiff is a citizen of Illinois and defendant is a foreign corporation, having its principal place of business in the State of Arkansas. The amount in controversy is alleged to be in excess of $10,000, exclusive of interest and costs.

Plaintiff alleges that on or about December 10, 1968, the parties entered into a written agreement. Plaintiff alleges that he was engaged to serve as defendant's exclusive representative covering government contracts for the manufacture of license plates in several states, including Illinois. Pursuant to this contract, plaintiff acted as defendant's representative and assisted in the successful bid for the 1970–71 Illinois license plate contract, and the manufacture of those plates. The contract provided that plaintiff was to be compensated on a commission basis, said commission to be based on the number of license plates supplied to the State.

It is not disputed by either party that the December 10, 1968 agreement was an illegal one, which had among its purposes the purchase of influence with the office of the late Secretary of State, Paul Powell. The question is whether a second contract, which forms the basis for plaintiff's claim, was so unrelated to the first illegal contract as to escape taint of illegality and to support plaintiff's recovery of commissions.

The parties entered into their second agreement on November 2, 1970, pursuant to which plaintiff was to continue to

act as defendant's exclusive representative covering government contracts. Plaintiff argues that the second contract was completely independent of the illegal first contract. Plaintiff bases his argument primarily on the fact that the second agreement was reached shortly after the death of Paul Powell, an event which plaintiff claims signaled the end of his influence with the Secretary of State's office. Plaintiff argues that all parties knew that his influence was now lost, and that therefore the contract was necessarily one for legitimate services.

Defendant argues that the second contract was nothing more than a continuation of the first contract.

The law is clear that if the second contract grew out of, and was connected with, the first agreement, then the second agreement is likewise void and unenforceable.

■ When parties to an illegal contract attempt to extend or renew the contract by entering into a new agreement not otherwise tainted by illegal activity, the new contract is illegal and unenforceable. *Armstrong* v. *Toler*, 24 U.S. 258, 6 L.Ed. 468 (1826). The rule in that case, as articulated by *Mr. Chief Justice* Marshall, was that:

> (W)here the contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it. And if the contract be in part only connected with the illegal transaction and growing immediately out of it, though it be, in fact, a new contract, it is equally tainted by it. (24 U.S. at 261)

The Illinois Supreme Court adopted this rule in *Nash* v. *Monheimer*, 20 Ill. 215 (1858). The rule in Illinois, then, is that the promise sued upon must be "unconnected with the illegal act . . ." or it will be tainted and unenforceable. *Bishop* v. *American Preservers Co.*, 157 Ill. 284, 41 N.E. 765 (1895).

It was also stated in *Webster* v. *Sturges*, 7 Ill.App. 560 (1st Dist. 1880) that:

> . . . the new contract must be in no sense a continuation or modification of the old. The old contract must be utterly abandoned, so that neither its terms or its consideration, nor any claims of right springing out of it, shall enter the new. (7 Ill.App. at 564)

A party can only recover when he "can show a right of recovery without relying upon the illegal contract and without having the court sanction the same." *Teich* v. *City of Chicago*, 298 Ill. 498, 501, 131 N.E. 605, 606 (1921).

■ Defendant argues that the connection between the first and second contracts is established by a reading of the agreements themselves, as well as plaintiff's own testimony. Such testimony is properly considered, for parol evidence "is always competent to show that a written contract, fair and lawful on the face, is in truth contrary to law, morals or public policy." *Muskogee Land Co.* v. *Mullins*, 165 F. 179, 180 (8th Cir. 1908).

Defendant argues that the terms of the second contract, including plaintiff's rights and duties, may be determined only by reference to the first agreement. The pertinent language of the second agreement is as follows:

> Reference is made to my letter dated December 10, 1968, which served as your appointment as our exclusive representative covering government contracts in Illinois, Massachusetts, Connecticut, and Delaware. As stated in my letter, your arrangement with our firm would be subject to review from time to time. For our part, we are of the opinion that the arrangement has been satisfactory and we would like to take this opportunity to extend our agreement, as of this date, for an additional two years, at which time it will again be reviewed.
>
> *         *         *         *         *         *
>
> Please continue your good efforts.
>
> *         *         *         *         *         *

Thus, according to defendant, this illegal first contract was never aban-

doned. After the date of the second contract, defendant continued to pay commissions pursuant to the terms of the first contract.

█ It was admitted by plaintiff in his deposition in this case and in his testimony in the criminal trial of co-conspirator Tal Rauhoff, 74 CR 75, that one of his duties under the terms of the first contract was the purchase of influence with the late Paul Powell. It was likewise admitted by plaintiff in his deposition that it was his understanding that he was expected to pay bribes to the new administration. It is clear on the face of the second agreement that it was an outgrowth and continuation of the first contract, one which is admitted by both parties to have been illegal.

This Court holds that there is no genuine dispute of material fact and that as a matter of law, the second contract is also void for illegality. This Court will not aid in the enforcement of any rights arising out of the second contract and defendant's motion for summary judgment on plaintiff's amended complaint is granted.

The next issue is whether summary judgment is appropriate for either party as to defendant's amended counterclaim. Defendant alleges in his counterclaim that it was not in *pari delicto* with plaintiff and that, therefore, the Court should come to its aid and order the return of those commissions paid to plaintiff pursuant to the first illegal contract.

██ The law is clear that ordinarily any party to an illegal contract may not seek the aid and comfort of judicial relief. The Court will leave the parties as it finds them and will not assist either. This is done, not to punish one party more severely than another, but to maintain the dignity of the court and for reasons of general public policy. *Smythe* v. *Evans*, 209 Ill. 376, 70 N.E. 906 (1904).

█ Defendant argues that this rule does not apply to bar the relief sought, for the reason that defendant was not in *pari delicto* with plaintiff and was relatively less culpable with respect to the bribe. Defendant cites a number of Illinois cases for the proposition that when one party is comparatively without fault, he should not suffer the harsh consequences of the general rule.

Each party seeks summary judgment on defendant's amended counterclaim on the issue of whether defendant was in *pari delicto*. The Court must determine whether there is any genuine issue of material fact with respect to defendant's culpability.

Plaintiff's affidavits charge that defendant was a willing participant in the bribery scheme. Defendant, however, argues in its brief that its degree of culpability was minimal.

The Court has carefully examined the testimony of Patrick Stoltz, then President of the defendant corporation, which was given in the criminal trial of Tal Rauhoff, one of the co-conspirators in the bribery arrangement. Stoltz, a co-defendant, entered a plea of guilty to all charges in case no. 74 CR 75 and testified at Rauhoff's trial, as did plaintiff, who was an unindicted co-conspirator. Stoltz gave the following significant testimony during that trial:

Q. So you, who bribed Paul Powell, are today making the license plates for the State of Illinois, thanks to the fact that Metal Stamping has been dismissed from this case—yes or no?

A. I was a party to the bribe. (transcript at 392)

\* \* \* \* \* \*

Q. I see. When did you first find out that he was involved, Mr. Stoltz?

A. The first occasion that I recall where I knew for certain that there was illegal activities was in, I believe, August of 1969, after we had received our first payment for Illinois license plates and Jim Manning called my office

in Conway and asked if I had sent a commision check to Jim Manning. (transcript at 353)

* * * * * *

Q. Now, at this time, sir, you had bid, received the bid, received the contract and your firm was well on its way to making $7 million, is that right?

* * * * * *

A. Sales of $7 million.

* * * * * *

A. Well, I'm not an accountant either. I would say that after tax, over the two-year contract, we probably realized $700,000. (transcript at 364)

* * * * * *

Q. Did you question Mr. Manning as to what was going on?

A. I didn't need to question him, I knew the answer at that point.

Q. Did you question your exclusive sales representative for the State of Illinois as to whether or not he was in an illegal conspiracy with Jim White, the purchasing agent for the State of Illinois, Mr. Stoltz? Yes or no, it is a simple answer.

A. I did not.

Q. Did you fire him as your exclusive sales representative for the State of Illinois upon learning this fact?

A. I did not. (transcript at 354)

* * * * * *

Q. When Mr. White told you in August, or indicated by his conversation, that he really was the recipient of a major bribe, did that disturb you, Mr. Stoltz?

A. It did.

Q. Were you very unhappy?

A. I wasn't proud of the fact that I allowed myself to get involved.

Q. You felt that you had been used by these people?

A. Not necessarily used; I went along knowingly with what happened.

Q. You did a little more than "go along," didn't you? Specifically, didn't you send Paul Powell and his wife and Jim White and his wife out to Las Vegas for a week two months later?

A. Yes, I did.

As alleged in defendant's amended counterclaim, during the years 1970 and 1971 defendant paid to plaintiff almost half a million dollars in commissions. It is also admitted by defendant, through Patrick Stoltz, that the corporation received about $700,000 in profits as a result of the illegal first contract.

Defendant admits to having knowledge of the acts of bribery in August of 1969, after receipt of the first payment by the State of Illinois. Defendant admittedly continued to receive payments from the State in the amount of several million dollars. By the very terms of the November 1, 1970 letter, defendant was satisfied with plaintiff's performance of the illegal contract and wished to continue their business relationship.

All of these facts, admitted by defendant, along with the guilty pleas of Patrick Stoltz, are considered by the Court to be a clear admission of defendant's knowledgeable and willing involvement and profit in both contracts.

Accordingly, this Court holds that as a matter of law, defendant is in *pari delicto* with plaintiff. Summary judgment is granted in favor of plaintiff and against defendant on defendant's amended counterclaim.