# Illinois Official Reports

## Appellate Court

---

**_Deutsche Bank National Trust Co. v. Hart_, 2016 IL App (3d) 150714**

---

| | |
|---|---|
| Appellate Court Caption | DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Long Beach Mortgage Loan Trust 2005-WL1, Plaintiff-Appellee, v. DANIEL J. HART, ELLEN C. HART, and FIRST UNITED BANK, as Trustee Under the Provisions of a Trust Dated March 16, 1994, and Known as Trust No. 1671, and JVS FINANCIAL SERVICES, INC., Defendants (Daniel J. Hart and Ellen C. Hart, Defendants-Appellants). |
| District & No. | Third District<br>Docket No. 3-15-0714 |
| Filed<br>Supplemental<br>opinion filed | September 22, 2016<br><br>September 30, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 07-CH-4201; the Hon. Daniel Rippy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Paul D. Nordini, of Nordini & Thompson, of Naperville, for appellants.<br><br>E. William Maloney, Jr., of Maloney & Craven, PC, of Des Plaines, for appellee. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Schmidt concurred in the judgment and opinion.
Justice Carter specially concurred, with opinion.

**OPINION**

¶ 1        Defendants appeal from the trial court's order confirming the sale of foreclosed property. Defendants argue that the agreed order of foreclosure has no legal effect because the mortgage itself was void. We reject defendants' argument on a number of grounds and initiate sanctions proceedings against defendants and their counsel.

¶ 2                                                FACTS

¶ 3        On December 21, 2007, plaintiff, Deutsche Bank National Trust Company, filed a complaint for foreclosure against defendants, Daniel and Ellen Hart. The foreclosure was sought upon a mortgage signed by defendants on April 1, 2005, securing a loan of $716,000. Paragraph I of the complaint contained the legal description of the mortgaged real estate as well as the common address of 26828 S. Will Center Road, Monee, Illinois. The complaint alleged that defendants failed to pay the monthly installment due on August 1, 2007, and all payments thereafter, resulting in a total amount owed of $734,758.11.

¶ 4        Plaintiff attached a copy of the mortgage in question as an exhibit to the complaint. On the first page of the mortgage, "1 of 16" has been handwritten at the bottom of the page. Typewritten on the bottom of each subsequent page is the page number, as well as the number of pages—for example, the bottom of the second pages reads "Page 2 of 15." On each page, however, the typewritten pagination has been crossed out, with a number handwritten underneath. The presumable cause of this repagination is the third page of the attached mortgage, which contains the legal description of the property. The legal description is the same as that provided in the complaint. This page, unlike the others, does not bear defendants' initials. In turn, the next page has a typewritten "Page 3 of 15" crossed out, with the numeral 4 written underneath. This fourth page also contains a large blank space, above which it reads "Legal Description Attached Hereto and Made a Part Hereof." Beneath the blank space appears the property address: 26828 S. Will Center Road, Monee, Illinois.

¶ 5        Defendants were served with a summons on December 28, 2007. On February 4, 2008, Gary Davidson filed an appearance on behalf of defendants. On March 24, 2008, the trial court entered a default judgment for foreclosure and sale, as defendants had yet to file an answer to the complaint. Davidson subsequently filed a motion to vacate the default judgment, which the trial court granted. Attorney Brett Geiger—of the same firm as Davidson—filed an answer on behalf of defendants soon thereafter. In their answer, defendants admitted to, *inter alia*, paragraph I of the complaint, which contained the legal description.

¶ 6        Plaintiff moved for summary judgment on July 30, 2008, noting that defendants had not denied any of the relevant allegations made in the complaint. On October 3, 2008, defendants moved to amend their answer. In that motion, defendants claimed for the first time that the legal description contained in the complaint "was not the property Plaintiff or Defendant intended to secure with the loan."

¶ 7        As an exhibit to their motion for leave to amend the answer, defendants attached a copy of the mortgage that had not been repaginated. See *supra* ¶ 4. They also attached a copy of a quitclaim deed from November 2004. The quitclaim deed evidenced that defendants had conveyed to themselves as tenants in the entirety a tract of less than five acres. In the motion, defendants argued that it was only that smaller tract of land that they had intended to mortgage.

¶ 8        The trial court granted defendants' motion for leave to amend their answer. The amended answer, filed on October 8, 2008, denied the allegations in paragraph I of the complaint. Plaintiff subsequently withdrew its motion for summary judgment.

¶ 9        The parties spent most of the next three years engaging in discovery. At a court appearance on May 2, 2011, both parties indicated that they had "entered into substantive discussions intended to settle the outstanding issues between the parties." The trial was set for October 3, 2011.

¶ 10       On September 27, 2011, plaintiff filed a motion to bar the defense of mistake. In support, plaintiff argued that mistake is an affirmative defense and that an affirmative defense not pled is waived. On the day of trial, before the trial court could rule upon plaintiff's motion, the parties met in the chambers of trial judge Barbara N. Petrungaro to discuss settlement terms. Negotiations continued that afternoon outside of chambers. The parties eventually agreed on terms, and an agreed judgment of foreclosure and sale was filed by the trial court on October 3, 2011.

¶ 11       The agreed judgment declared defendants to owe $988,585.60 on the note and mortgage and provided a four-month redemption period, expiring on February 3, 2012. The agreed judgment contained the full legal description as provided in the original complaint. The agreed judgment also provided that defendants would maintain possession of the property for 60 days after the date of any future order confirming sale. The agreed judgment was signed by both defendants, as well as their attorney, David Smith, of the same firm as Davidson and Geiger. A separate agreed order filed the same day declared that plaintiff would pay a sum of $10,000 to defendants.

¶ 12       The February 3, 2012, deadline passed without defendants making a redemption. On March 14, 2012, Daniel Hart filed a *pro se* motion "to cease and desist any further action [and] pending sheriff's sale of property." The motion also sought to strike the agreed judgment of October 3, 2011, "re-open [the] case," and proceed to trial. Daniel also requested the trial court "to release plaintiffs from mortgage and note and return property as free and clear." In support of the motion, Daniel wrote as follows:

> "Former defendants *** Daniel and Ellen Hart were blatantly and willfully lied to by opposing counsel—were coerced into signing all rights to property and to agree to the contents of former plaintiff's decrees as true and correct by telling Daniel and Ellen Hart that if we didn't sign off that they would take procession [*sic*] of our property and throw us out the following day—October 4th, 2011."

Daniel further contended that plaintiff had "inserted fictitious paperwork," in reference to the legal description, and that defendants would not have signed such a mortgage. David Smith subsequently sought and was granted leave to withdraw as attorney for defendants.

¶ 13       Plaintiff filed a motion to strike defendants' motion. On June 12, 2012, Thomas Burdelik filed an appearance on behalf of defendants, as well as a motion to vacate agreed orders. In that motion, Burdelik expounded upon defendants' claims that plaintiff's counsel, Craig Cronquist,

had threatened that defendants could be removed from their home within 48 hours if plaintiff prevailed at trial. The motion also alleged that defendants' previous counsel (Smith) did not have sufficient experience in mortgage litigation and that his recommendation that they settle on the day of trial was "a complete about face" from his prior confidence in the case. The motion concluded: "Upon later reflection [defendants] recognized that their interests had not been well represented, which lead [*sic*] to the present motion." The motion to vacate agreed orders also elaborated on defendants' claim that they had not intended to mortgage the entirety of their property.

¶ 14    In a response filed on July 2, 2012, plaintiff argued that the parties were bound by the settlement agreement and that the settlement was neither grossly unfair nor unconscionable. Further, plaintiff reasserted that defendants were barred by waiver from raising error as an affirmative defense. Plaintiff attached as an exhibit to its response a copy of a check for $10,000 dated October 20, 2011, and made payable to defendants and their attorneys. In an affidavit also attached to plaintiff's response, Cronquist denied having made any threats to defendants.

¶ 15    The matter proceeded to an evidentiary hearing held on August 15, 2012. Though the record on appeal does not include a report of proceedings for this hearing, the trial court's subsequent order—dated September 24, 2012—provides a detailed summary of the testimony presented.[1] It is from this summary that we detail the evidence presented.

¶ 16    Daniel testified that the property at 26828 S. Will Center Road encompasses 40.3 acres of land. He and Ellen contacted mortgage broker Joanne Rogers with the intent of mortgaging 40 acres of their land. Rogers told them that 40 acres would be a nonconforming loan and that they would have to decrease the acreage. At Rogers' behest, defendants asked attorney Raymond Feeley to prepare a quitclaim deed. Daniel believed that the quitclaim deed was for seven acres. He felt that the legal description in the quitclaim deed was the legal description that should have been later attached to the mortgage.

¶ 17    Defendants were represented by Smith as they engaged in settlement discussions on October 3, 2011. Defendants rejected all settlement offers before breaking for lunch. After lunch, Smith talked with Cronquist in the hall. Daniel Hart (one of the defendants) testified that when defendants joined the attorneys in the hall, Cronquist conceded that defendants might win on the mortgage issue. However, Cronquist assured defendants that plaintiff would still be able to collect on the note and that defendants could be evicted from their home the next day. Daniel testified that Smith agreed with Cronquist's statements. As part of the settlement, plaintiff agreed to pay $10,000 and to give defendants extra time on the property. On the way home from the courthouse on October 3, 2011, Daniel learned from multiple sources that Cronquist's threat was false, that defendants could not be evicted in such a short time frame. Daniel later received and cashed the check. At that time, defendants owed Smith's law firm over $9,000.

---

[1]Though the appellant has the burden of providing a record on appeal sufficient to support its claims of error (*Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984)), the extremely detailed summary by the trial court provides the necessary details here. Indeed, the nature of that summary tends to indicate that the proceedings of the evidentiary hearing were not recorded or transcribed.

[2]Though the record before us contains no direct evidence explaining the delay of more than a year

¶ 18    The testimony of Ellen Hart was substantially similar to that of her husband. She agreed that they did not intend to mortgage the entire 40 acres and described the legal description in the quitclaim deed as encompassing 15 acres. Ellen testified that Smith had expressed confidence in their case but his demeanor changed on the day of trial. When Cronquist told defendants they could be removed from their property within 24 hours, Smith told them the statement was correct. Ellen testified that if she had known the statement to be false, she would not have agreed to settle.

¶ 19    Cronquist testified that on October 3, 2011, the trial court met with the attorneys in chambers in an effort to settle the case. Thereafter, Cronquist met with Smith to discuss settlement parameters. It became apparent that the settlement would involve payment to defendants to ease the costs associated with moving, as well as providing them additional time to move out. Cronquist testified that he never predicted plaintiff would lose on the mortgage issue but win on the note. He did not make any sort of predictions regarding cases to the opposition. Additionally, his motion *in limine* regarding the defense of mistake was still pending at that time. Cronquist denied making any sort of threats regarding eviction to Smith or to defendants. He knew that eviction in such a short time frame would be an impossibility.

¶ 20    Cronquist testified that the settlement had three main parts. First, plaintiff would pay defendants a sum of $10,000. Second, the redemption period, which is normally three months, would be extended to four months. Third, defendants would be given 60 days in possession following a sheriff's sale as opposed to the statutorily allowed 30 days.

¶ 21    Smith also testified at the evidentiary hearing. On the day of trial, he had lengthy discussions with defendants and with Cronquist. He never discussed eviction with defendants, and the possibility of eviction within the next 24 hours was never raised. Smith knew such an eviction would be impossible. Defendants never asked him about eviction. Smith's opinion of the case did not change during settlement negotiations. Smith testified that Cronquist never predicted that defendants would win on the mortgage or that plaintiff would win on the note. Smith was not planning on calling Rogers as a witness because Rogers could not recall any details of her dealings with defendants. Her testimony would not be helpful.

¶ 22    On September 24, 2012, trial judge Petrungaro—the same judge as had presided over the settlement—denied defendants' motion to vacate agreed orders. The court wrote:

> "In this case, there has not been sufficient evidence presented to establish that there was any type of fraudulent misrepresentation or coercion, incompetence or gross disparity. No errors of law are apparent on the face of the record and there has been no newly discovered evidence that was not presented prior to the October 3, 2011 date."

¶ 23    A sheriff's sale of the property was scheduled for December 19, 2013. Notice for the sale was filed on November 14, 2013.[2]

¶ 24    At some point prior to the sale—the dated file stamp is illegible—Daniel filed a *pro se* motion "to postpone and cease and further action [and] pending sheriff's sale." Once again, Daniel sought to "re-open" the case and strike the ruling of October 3, 2011. In support, Daniel reiterated the points he had raised in his previously denied *pro se* motion. The trial court set the motion for a hearing to be held on May 15, 2014.

---

[2]Though the record before us contains no direct evidence explaining the delay of more than a year between the denial of defendants' motion to vacate and the scheduling of the sheriff's sale, future filings in the case reference defendants' filing for Chapter 7 bankruptcy in this period.

¶ 25 In its written response to Daniel's motion, plaintiff advanced the same counterarguments it had made previously. Moreover, plaintiff asked for sanctions against defendants, writing:

"[Plaintiff] submits that the current allegations before the Court are sanctionable, given the long history of this case, and that this Court should and ought to consider sanctions for the filing and assertion of frivolous and scurrilous pleadings. [Defendants] have lived at their property for approximately seven years without paying a cent."

¶ 26 Attorney Paul Nordini subsequently filed an appearance on behalf of defendants. After receiving leave to amend Daniel's *pro se* motion, Nordini filed a motion for summary judgment. In the motion, defendants asserted that they only intended to mortgage 10 acres of their land. They alleged that the original mortgage had been illegal and that the court could not enforce an illegal contract. In turn, they argued that the court's order of September 24, 2012 (denying defendants' previous attack on the agreed order of foreclosure), was void.

¶ 27 In a five-page memorandum decision filed on August 4, 2014, trial judge Thomas A. Thanas denied defendants' motion for summary judgment. The court noted that the issue had been fully litigated before Judge Petrungaro in 2012 and that it was "clear that there was no error made in the application of Illinois law to the facts leading to the execution of the 2005 mortgage document or [defendants'] consent to the entry of the 2011 agreed order." The court also expressly rejected defendants' voidness argument, writing:

"[Defendants'] main argument is that the alleged tampering with the 2005 mortgage by adding an over-inclusive legal description rendered the 2005 mortgage void *ab initio*, and the agreed order that seemed to breathe life into the mortgage was also void. As Judge Petrungaro observed, the 2004 quitclaim deed and the mortgage document were key documents in assessing [defendants'] claim. While [defendants] may have had the intent to carve out their homestead from the 2005 mortgage, their intent was not manifested in the actual documents that were signed by [defendants]. *** But, even if their intent was not manifested in the documents, it did not render the mortgage void *ab initio*. ***

The decision to enter into an agreed order in 2011 only ratified the coverage of the 2005 mortgage to the 40-acre parcel."

¶ 28 The property was subsequently scheduled for a sheriff's sale in November 2014. Plaintiff, the purchaser at the sale, moved for confirmation of the sale on January 23, 2015, and the sale was confirmed in March. The confirmation was vacated two weeks later, however, due to insufficient notice to Nordini.

¶ 29 On May 8, 2015, defendants, through Nordini, filed an objection to the motion for confirmation of sale. In the motion, defendants raised the same arguments that had been raised previously. After further filings and a hearing on defendants' objection, Judge Daniel Rippy issued an order confirming the sale on September 17, 2015. In overruling defendants' objection, Judge Rippy found that "there was essentially a settlement and a waiver by the Defendants." The order confirming sale provided defendants with 60 days to vacate the premises, as contemplated by the original settlement. The trial court denied defendants' request for 90 days.

¶ 30                                    ANALYSIS

¶ 31     On appeal, defendants argue that the trial court erred in confirming the sale of their property. Defendants do not contend here nor did they ever allege below that the mortgage they entered into with plaintiff was the result of predatory lending. A review of the record confirms such was not the case. Instead, defendants contend that "waiver cannot exist with a void mortgage." By implication, defendants' argument is that a void mortgage cannot be ratified via settlement. We reject these claims.

¶ 32                              I. Validity of Mortgage

¶ 33     Defendants do not argue that any terms of the settlement, memorialized in the agreed judgment of foreclosure, were illegal or that that agreement was otherwise unconscionable or fraudulently obtained. Instead, defendants argue that the mortgage itself was illegal and void due to the *post hoc* addition of an allegedly overinclusive legal description. Thus, defendants contend, the mortgage may not be the basis of any recovery and may not be revived by a court.

¶ 34     Initially, we address the implicit premise underlying defendants' argument, that the mutual agreement to settle is tantamount to recovery on the contract. Stated another way, defendants assume that where parties reach a settlement agreement related to contractual claims, illegality of the original contract renders any future settlement inherently illegal.

¶ 35     Addressing a similar issue in *Ritacca v. Girardi*, 2013 IL App (1st) 113511, ¶ 27, the First District wrote:

         "The general rule is that for a new contract that follows a prior illegal contract to be enforceable, ' " 'the new contract must be in no sense a continuation or modification of the old. The old contract must be utterly abandoned, so that neither its terms or its consideration, nor any claims of right springing out of it, shall enter the new.' " ' *Manning v. Metal Stamping Corp.*, 396 F. Supp. 1376, 1378 (N.D. Ill. 1975) (quoting *Webster v. Sturges*, 7 Ill. App. 560, 564 (1880)); [citation]. Conversely, when parties to an illegal contract attempt to extend or renew the contract by entering into a new agreement, even where that new agreement is not otherwise tainted by illegal activity, it is void and unenforceable."

In that case, the court found that a settlement agreement following an illegal contract was valid and enforceable because "the settlement agreement did not continue or renew the illegal business arrangement." *Id.* ¶ 30. In fact, the court noted, the settlement explicitly *ended* the business relationship. *Id.* The court contrasted this with the facts of *Manning*, in which the second contract was explicitly an extension of the first, and "the terms of the second contract could not even be determined without reference to the prior illegal contract." *Id.* ¶ 29 (citing *Manning*, 396 F. Supp. at 1378).

¶ 36     Notably, defendants have failed to cite a single case in which a settlement agreement has been set aside because an earlier contract was void. In fact, the only case cited by defendants on this issue is *Ritacca*, a case in which the First District reached the opposite conclusion as that which defendants urge here. Moreover, other than baldly asserting that a void mortgage cannot be enforced, defendants have made no substantive arguments regarding whether the settlement was an extension of the mortgage.

¶ 37     It is well settled that the law favors settlements. *E.g.*, *Kandalepas v. Economou*, 191 Ill. App. 3d 51, 53 (1989). "[I]n the absence of fraud or duress, settlements once made should be

final. [Citation.] Once a court approves a settlement, it merges all included claims and causes of action and is a bar to further proceedings. [Citation.]" *Johnson v. Hermanson*, 221 Ill. App. 3d 582, 585 (1991). Though defendants at one point asserted to the trial court that they agreed to the settlement under duress, they have dropped those claims on appeal. The agreed judgment of foreclosure and accompanying order that plaintiff pay defendants $10,000 are not extensions of the mortgage. The judgment and order can be read independently, without reference to the mortgage itself for any material terms. The judgment evidences defendants' agreement to forego trial in exchange for an extra month in the redemption period, an extra month to vacate after a sale, and $10,000. Thus, even if the mortgage is construed as illegal and void, the settlement that followed is enforceable.

¶ 38    Our conclusion is only bolstered by the practical realities of the case before us. Allowing defendants to overturn the settlement agreement would allow defendants to reap the benefits of that settlement, only to challenge it at a more convenient time. While defendants have offered to return plaintiff's $10,000, there is no way to return the extra time spent on the property that defendants received as a direct result of the settlement. Such a result would undermine any incentive plaintiff might have to settle and thus run directly counter to the public policy favoring such settlements.

¶ 39    We would be remiss if we did not address the other ways in which defendants' argument on appeal must fail. First, defendants assert that "[b]ecause the mortgage (as recorded) is void, neither the parties nor the court can revive such a document or waive arguments against it." In making this argument, defendants conflate the concepts of void *ab initio* and voidability.

¶ 40    Where a contract is found to be void *ab initio*, the contract is "treated as though it never existed; neither party can choose to ratify the contract by simply waiving its right to assert the defect." *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 164 (2004). Contracts have been deemed void *ab initio* where the subject matter is illegal (*e.g.*, *Hall v. Montaleone*, 38 Ill. App. 3d 591, 592 (1976) (gambling contracts)) or where one party did not have the authority to enter into the contract (*e.g.*, *Grassini v. Du Page Township*, 279 Ill. App. 3d 614, 620 (1996)). Defendants contend that the *post hoc* addition of an allegedly overinclusive legal description rendered the mortgage void *ab initio*.

¶ 41    A voidable contract, unlike one that is void *ab initio*, may be ratified and enforced by the obligor—though not by the wrongdoer. *Coregis*, 355 Ill. App. 3d at 164. In other words, "if a contract is merely voidable, a party can either opt to void the contract based upon that defect or choose, instead, to waive that defect and ratify the contract despite it." *Id.* at 164-65. Because a voidable contract may be ratified, the party seeking to prevent its enforcement must have promptly sought rescission of the contract. *Zirp-Burnham, LLC v. E. Terrell Associates, Inc.*, 356 Ill. App. 3d 590, 604 (2005); see also *Coregis*, 355 Ill. App. 3d at 165 ("Generally speaking, '[o]ne seeking to rescind a transaction on the ground of fraud or misrepresentation must elect to do so promptly after learning of the fraud or misrepresentation, must announce his purpose and must adhere to it.' " (quoting *Mollihan v. Stephany*, 35 Ill. App. 3d 101, 103 (1975))).

¶ 42    If the mortgage in the present case was deficient in any respect, it would be merely voidable. "When there is a mutual mistake of fact as to a material term, the contract is voidable and can be rescinded by an adversely affected party unless that party bears the risk of the mistake." *Alliance Property Management, Ltd. v. Forest Villa of Countryside Condominium Ass'n*, 2015 IL App (1st) 150169, ¶ 39. Even if the addition of a purportedly erroneous legal

description could be construed as fraud, "[a] contract induced by fraud is not void but is voidable at the election of the party claiming to have been defrauded." *23-25 Building Partnership v. Testa Produce, Inc.*, 381 Ill. App. 3d 751, 757 (2008). At no point did defendants pursue the remedy of rescission of the mortgage contract. They accepted the loan of $715,000, signed the mortgage securing that loan on April 1, 2005, and did not raise the issue of the legal description until October 3, 2008. Even if defendants did not become aware of the issue until around this time, rather than adhere to their position, they agreed to settle the matter in exchange for extra time on the property and a sum of $10,000. Thus, by both ratification of the mortgage contract and by settlement, defendants have waived the opportunity to attack that mortgage.

¶ 43　　Of course, to this point we have proceeded under the assumption that the mortgage instrument was defective in some way, either through mutual mistake or fraud. Defendants assert that this is so because "the mortgage that was recorded was altered significantly after the Defendants had executed the document," and because "[t]he material alteration to the mortgage was done without the Defendants' consent."

¶ 44　　The record shows these claims to be patently false. Page three of the mortgage as signed by defendants—page four after repagination—expressly provided that the legal description of the mortgaged property would be added at a later time, reading: "Legal Description Attached Hereto and Made a Part Hereof." The addition of the legal description, then, was not an alteration, as defendants posit, but an addition that was *expressly* contemplated at the time of signing. Moreover, defendants initialed the bottom of that page and signed the mortgage instrument. They cannot reasonably claim that they did not consent to the later addition of a legal description. Finally, the original mortgage also contains the real address of defendants' property. As Judge Thanas pointed out in 2014: "While [defendants] may have had the intent to carve out their homestead from the 2005 mortgage, their intent was not manifested in the actual documents that were signed by [defendants]."

¶ 45　　In summary, the addition of the legal description of property to the mortgage did not render that mortgage void or voidable in any way. Even if that addition *was* tantamount to fraud, the mortgage would only be voidable, such that it would still be enforceable following defendants' ratification. Next, even if the mortgage were void *ab initio*, such voidness would not undermine the effect of the settlement terms defendants subsequently agreed to. Simply stated: defendants' arguments on appeal fail on numerous levels.

¶ 46　　　　　　　　　　　　　　II. Sanctions

¶ 47　　Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) allows us to *sua sponte* impose an appropriate sanction upon a party or a party's attorney if

　　　　"it is determined that the appeal or other action itself is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose."

The rule further provides that "[i]f the reviewing court *initiates* the sanction, it shall require the party or attorney, or both, to show cause why such a sanction should not be imposed before imposing the sanction." (Emphasis added.) *Id.*

¶ 48    After review of the proceedings at both the trial and appellate levels, it is apparent to this court that defendants' primary goal over the last 10 years was to simply remain in possession of their property for as long as they possibly could, without having to pay any of the money they owed plaintiff. Specifically, defendants have remained on their property for more than eight years since plaintiff filed its original complaint, apparently without having made a single payment on their $716,000 mortgage. In that time, defendants have continued to be stubbornly litigious after *voluntarily* agreeing to a judgment of foreclosure and accepting benefits in exchange for that agreement.

¶ 49    On the metaphorical eve of a sheriff's sale, Daniel filed a *pro se* motion attacking the settlement that he and Ellen had agreed to. That first *pro se* motion asserted a number of baseless claims, including the remarkable request that the property be returned to defendants free and clear of the mortgage. Though these claims were ultimately denied, they nevertheless caused a delay in the proceedings of more than six months.

¶ 50    Years later, and once again with a sheriff's sale pending, Daniel filed a second *pro se* motion in which he reasserted the same frivolous arguments that had previously been denied. Counsel for defendants followed that motion with a motion for summary judgment, a truly perplexing filing in a case in which a judgment had already been issued. Once again, defendants' frivolous arguments were denied, with Judge Thanas pointing out that the issue had already been fully litigated. Of course, the fact that the issue had been fully litigated did not stop defendants from raising the same frivolous claims again in objecting to the motion to confirm sale. Once again, defendants had delayed plaintiff from taking possession of the property to which it was legally entitled and forced plaintiff to waste further resources.

¶ 51    Defendants continued in their attempt to delay justice by filing this appeal in which they have raised, for the umpteenth time, issues that have no basis in law or fact. As a result, the filing of this appeal has resulted in the needless extension of a baseless lawsuit. Moreover, during the course of this frivolous appeal, defendants have filed several motions that lacked appropriate citation to any legal authority. See Illinois Supreme Court Rule 361(a) (eff. Jan. 1, 2015) ("Motions shall be in writing and shall state the relief sought and *the grounds therefor*." (Emphasis added.)). For instance, defendants filed a motion to stay the trial court's judgment just days before the two-month post-sale period was to expire. In the motion, defendants argued that they should not be required to file an appeal bond, instead offering to add plaintiff to the insurance policy taken out on the property. See Illinois Supreme Court Rule 305(a) (eff. July 1, 2004) (requiring the filing of an appeal bond in order to attain a stay of enforcement of money judgment). We held defendants' stay motion in abeyance, rejected defendants' insurance request, and gave defendants 45 days to post a "fully collateralized appeal bond in the amount of $500,000." Despite this order, defendants filed (one day before the 45-day period was set to expire) a second motion asking that this court accept their homeowners' insurance policy as bond.[3] When this court rejected that argument, defendants filed a motion

---

[3]Defendants argued that the insurance policy should be accepted as bond pursuant to Illinois Supreme Court Rule 305(j) (eff. July 1, 2004). That rule provides: "The filing of an insurance policy pursuant to section 392.1 of the Illinois Insurance Code (215 ILCS 5/392.1 (West 1992)) shall be considered the filing of a bond for purposes of this rule." Ill. S. Ct. R. 305(j) (eff. July 1, 2004). Section 392.1 of the Illinois Insurance Code, however, makes explicit that an insurance policy may only serve as bond under Rule 305(j) "[w]henever an appeal is taken from any judgment in any case wherein it appears to the court that all of the particular liability of the appellant thereunder is insured against in and

to reconsider. That motion, however, did not contain any arguments as to why the court should reconsider its ruling.[4]

¶ 52    As of the filing of defendants' motion to reconsider on February 19, 2016, defendants remained on the property in question, approximately eight years since plaintiff filed its original complaint and more than four years since they agreed to the order of foreclosure. During this time, defendants apparently failed to make a single payment toward their legitimate debt to plaintiff. It is apparent to us that this appeal was little more than another of defendants' stalling tactics. We refuse to allow the court system to be used merely as a mechanism to delay, without just cause, the payment of an obligor's legitimate debt to his or her obligee.

¶ 53    In *Bank of America, N.A. v. Basile*, 2014 IL App (3d) 130204—a case also dealing with mortgage foreclosure—we initiated sanction proceedings based on the defendants' attempts to forestall justice. Explaining the need for sanctions in such a context, we wrote:

> " 'The tactics employed by defendants in this case caused the expenditure of significant time and resources not only by the court below, but by the judges, law clerks, librarians, and clerk's office of this court.' [*Parkway Bank & Trust Co. v.*] *Korzen*, 2013 IL App (1st) 130380, ¶ 92. 'By imposing a fine in this case, we seek not only to deter similar conduct by future litigants, but to provide some measure of compensation for the public fisc for that needless expenditure.' [*Id.*] Moreover, we note the expense the public consumer suffers when individuals engage in behavior similar to that of the defendants in the instant case. A mortgagee's failure to satisfy his or her financial obligation along with any resulting costs and fees the mortgagor must expend to recover the property or asset from the mortgagee is almost always shifted back onto the public consumer. While we are sensitive to the fact that mortgagees are occasionally exposed to circumstances that may make them unable to satisfy their obligation, we will not approve or reward the harassing behavior/stalling tactics present in the instant case." *Basile*, 2014 IL App (3d) 130204, ¶ 40.

¶ 54    We find that sanctions should be "initiated" against defendants and their attorney for filing a frivolous appeal. See Ill. S. Ct. R. 375(b), Committee Comments (adopted Aug. 1, 1989). Defendants' appeal was frivolous in that it was without merit and had no chance of success. See *id.* Moreover, the appeal was conducted in a frivolous fashion, in that its primary purpose was clearly to delay the enforcement of a judgment. See *id.* We reach these conclusions through application of an objective standard, as suggested by the committee comments to Rule 375; that is, we find that no reasonable, prudent attorney would have brought this appeal or engaged in such conduct on appeal. See *id.*

¶ 55    We direct plaintiff to file within 14 days an affidavit of expenses and attorney fees incurred as a result of this appeal.[5] Defendants and their attorney shall have 14 days to file a response brief. Defendants' response must "show cause [as to] why such a sanction should not be

---

by a liability insurance policy." 215 ILCS 5/392.1 (West 2014). As that is plainly not the case here, defendants' argument was patently frivolous.

[4]Ultimately, we denied defendants' motion to stay.

[5]An affidavit of costs and expenses provided preliminarily will enable the proceedings to move more efficiently, providing defendants with notice of and an opportunity to respond to the specific sum provided and eliminating further delay in the event that we decide sanctions to be appropriate.

imposed." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). If plaintiff finds it necessary, it may have 7 days to file a reply brief.

¶ 56      Parties are admonished all briefs must contain appropriate citations to the record and legal authority. Additionally, both parties are instructed to address the following questions: (1) On what date, if ever, did defendants vacate the premises in question; and (2) what payments, if any, were made on the loan between December 21, 2007, and the date of the filing of this order. This court will look with extreme disfavor upon any requests for extensions in the briefing schedule and will grant such requests only for the most compelling circumstances. Upon receiving the parties' affidavits and briefs, this court will file a supplemental opinion. In filing that opinion, we will look to "the subjective nature of the conduct" on appeal to determine whether sanctions will be imposed and, if so, the appropriate amount of the sanctions. Ill. S. Ct. R. 375(b), Committee Comments (adopted Aug. 1, 1989).

¶ 57                            CONCLUSION

¶ 58      The judgment of the circuit court of Will County is affirmed.

¶ 59      Affirmed.

¶ 60      JUSTICE CARTER, specially concurring.

¶ 61      I concur with the majority's decision in the present case, affirming the trial court's order of confirmation of sale of foreclosed property. I write separately, however, to express my concerns on the issue of Rule 375(b) sanctions.

¶ 62      I agree and concur that based on an objective standard of conduct, after consideration and review of this appeal and the other actions pursued in this court by the appellants, the majority has appropriately found this appeal to be frivolous and to be taken in a frivolous manner. See Ill. S. Ct. R. 375(b), Committee Comments (adopted Aug. 1, 1989). However, pursuant to the language of the rule, I do not believe that the actions taken at the trial level should be considered when our court initiates Rule 375(b) sanctions. See Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). In fact, nothing about sanctions for actions taken at trial or on appeal has been presented to this court by the parties. Although a request for sanctions has not been raised by the bank in this appeal, I note that the bank had requested sanctions in the trial court in response to one of the many motions filed by the defendants, but apparently the bank did not obtain a ruling on the matter (see *supra* ¶¶ 25, 27).

¶ 63      Furthermore, I believe it is important to note that in its discussion of Rule 375(b) sanctions, the majority in this case is not intending to suggest that appeals or actions taken at the appellate court level by the appellants or their attorneys in a foreclosure case are frivolous or intended to cause unnecessary delay merely because those appeals or actions ultimately end up being unsuccessful. Defense pleadings and actions at trial or on appeal that force a bank to prove its case, which might actually allow the clients to stay in the house longer, are perhaps the best the lawyer can do in representing the clients in a foreclosure case, assuming that the actions taken by the lawyer are based upon nonfrivolous legal and ethical principles. Thus, I do not believe that raising technical or other objections to a foreclosure action, which are not successful, would or should subject defendants and their attorneys to claims for sanctions in all cases.

¶ 64 However, in this case, the filing of this appeal and the actions taken by the appellant, I believe, justify this court in initiating the Rule 375(b) rule to show cause to allow the appellants and their attorneys to inform this court of their subjective rationale for their conduct. See Ill. S. Ct. R. 375(b), Committee Comments (adopted Aug. 1, 1989). Their response will allow this court to determine the appropriate action we should take regarding this matter.

¶ 65 For the reasons stated above, I respectfully specially concur with the majority opinion.

¶ 66 **SUPPLEMENTAL OPINION**

¶ 67 In this supplemental opinion, we address whether sanctions should be imposed upon defendants Daniel Hart and Ellen Hart and the law firm that represented them on appeal, Nordini & Thompson, Ltd. The parties have filed briefs and affidavits in compliance with the orders set forth in our original opinion. Upon review of these filings, as well as the facts of record previously discussed, we impose sanctions in the total amount of $30,093.75. Of that total, the Harts are liable for a total of $20,046.87, and the law firm of Nordini & Thompson, Ltd., is liable for a total of $10,046.88. Neither the Harts nor the law firm of Nordini & Thompson, Ltd., will be held liable for any portion of the other's respective share.

¶ 68 In his motion in opposition of sanctions, Paul Nordini of Nordini & Thompson, Ltd., urges that he conducted defendants' appeal in the manner of a reasonably prudent attorney. Specifically, he argues that "if a mortgage could be shown as void (not voidable), it could be argued that the entire court proceeding would be void on jurisdictional grounds, which would eviscerate any Court Order and Judgement of any kind." Indeed, a claim of voidness premised upon an alteration to the mortgage was the argument Nordini pursued on defendants' behalf, both at the trial level and in this appeal.

¶ 69 As described in our original opinion, such an argument was fundamentally deficient in numerous ways. First, the mortgage in question was not altered; as signed, it expressly contemplated that a full legal description would be added at a later time. See *supra* ¶ 44. Second, the argument failed to address the distinction between void and voidable. See *supra* ¶¶ 40-42. Finally, the argument conveniently ignored the fact that the Harts had already settled the case and accepted a $10,000 payment. Nordini and the Harts did not, in their original appellate briefs or in the sanctions filings, provide any support for the notion that a settlement could be set aside on these grounds. We also note that counsel, in his sanctions filing, has still provided no support for the notion that an insurance policy could properly serve as an appeal bond. See *supra* ¶ 51.

¶ 70 We thus reiterate our original finding that this appeal was frivolous. No reasonable, prudent attorney would have brought this appeal. We find nothing in the subjective nature of the conduct of either the Harts or the law firm of Nordini & Thompson, Ltd., that would mitigate against the imposition of sanctions. Accordingly, we turn to the question of what amount of sanctions would be appropriate.

¶ 71 Plaintiff has averred in its sanctions filings that the attorney fees for this appeal totaled $12,115.50, while the costs were $247.93. Moreover, the bank paid $7730.32 in real estate taxes on the property in question for the year that it has been out of possession during the pendency of this appeal. These amounts total $20,093.75. We enter sanctions in that amount, with the Harts liable for $10,046.87 and Nordini & Thompson, Ltd., liable for $10,046.88.

¶ 72    We enter sanctions of an additional $10,000 solely against the Harts. That figure represents the money the Harts received in originally settling this dispute. In exchange for their agreement to a judgment for foreclosure, the Harts received $10,000, in addition to an extra month in the redemption period and an extra 30 days of possession following a sale. The Harts accepted that money, then proceeded to file numerous frivolous pleadings in an attempt to extend the case, culminating in this appeal. Today, more than five years after the Harts received that $10,000 check, they remain on the property in question. In fact, since December 21, 2007, the Harts have not made any payments on their loan. They have, in essence, lived on their 40-acre farm for free for close to nine years. Because the Harts have been in contravention of their settlement agreement during the pendency of this appeal, we find that the return of the $10,000 as a sanction is appropriate.[6]

¶ 73    Plaintiff also seeks additional sanctions representing the amount of interest accrued on the judgment since the filing of the notice of appeal. As of November 1, 2016, that interest totals $93,847.90. We decline to impose further sanctions in that amount for the primary reason that we do not believe the conduct in this case justifies sanctions in such an amount. Moreover, we note that defendants are already liable for that amount pursuant to the judgment itself. See 735 ILCS 5/2-1303 (West 2014). As plaintiff has expressed understandable skepticism that defendants will actually pay any amounts imposed as sanctions, the real effect of sanctions for accrued interest would be to transfer portions of defendants' existing debt to a more likely payor in the form of their appellate attorney. Of course, this would not be a justifiable administration of Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994).

¶ 74    In closing, we agree with the sentiments expressed by the special concurrence to our original opinion. *Supra* ¶¶ 61-65. Pleadings or objections in a foreclosure action are not per se frivolous simply because they result in a delay that allows the defendants to remain in a home for a longer period, or because they ultimately fail on their merits. However, this distinction between frivolous and nonfrivolous arguments is increasingly blurred in the unique context of foreclosure defense.

¶ 75    Mortgage foreclosure law imposes a number of significant procedural and substantive hurdles in front of a mortgagee seeking to foreclose. Such safeguards are absolutely necessary, as they protect mortgagors facing the extraordinary action of being removed from their homes. However, those safeguards also provide defendants who do not have a rational defense to foreclosure with an opportunity to stave off the inevitable for inordinately long periods. In such cases then, success may be measured not by whether any individual filings are ultimately meritorious but by how long defendants are able to remain in their home. For example, in the present case, none of the defendants' motions, filings, or appeals have been found meritorious, but they have remained on their property for nearly nine years since foreclosure proceedings first commenced and have not paid any money on the mortgage. From their perspective, their frivolous conduct has been resoundingly successful.

---

[6] We note that plaintiff has explained in its sanctions filings that some of the money sought—namely fees, costs, and the $10,000 settlement repayment—should be paid to Chicago Title Insurance Company. However, we direct that all sanctions are payable directly to the law firm of Maloney & Craven, P.C., as attorney for Deutsche Bank National Trust Company. That law firm should dispense the proceeds as appropriate.

¶ 76    These conflicting incentives create an atmosphere in which the merits of a filing are secondary to the time it will take for that filing to be addressed. It follows that frivolous motions or appeals are more likely to be found in the mortgage foreclosure context. Accordingly, it is incumbent upon the courts, both trial and appellate, to impose sanctions for that frivolous conduct designed to help defendants remain in their home, with little regard for the law. We do not expect the imposition of sanctions in this case or similar cases to result in a chilling effect upon the willingness of mortgage defense attorneys to zealously advocate for their clients based on nonfrivolous legal and ethical principles. However, conduct of attorneys that falls outside of those principles is precisely the type of advocacy that can and should be chilled through sanctions.

¶ 77    Defendants sanctioned.

¶ 78    JUSTICE CARTER, concurring in part and dissenting in part from the supplemental opinion.

¶ 79    I concur with the majority's decision in the present case to impose sanctions on the Harts and their attorneys, Nordini and Thompson, Ltd., in the amount of plaintiff's costs and attorney fees. I also agree with the majority's ruling, declining to impose additional sanctions on the Harts and Nordini and Thompson, Ltd., for accumulated interest.

¶ 80    However, I respectfully dissent from the majority's decision as to the total amount of the sanctions imposed. I would only impose sanctions in the amount of $12,363.43 for plaintiff's costs and attorney fees ($247.93 for costs and $12,115.50 for attorney fees) and would enter those sanctions with the Harts liable for $6181.72 and Nordini and Thompson, Ltd., liable for $6181.71. Unlike the majority, I do not believe that it is appropriate under Supreme Court Rule 375(b) (eff. Feb. 1, 1994) to impose as additional sanctions the amount of the real estate taxes on the property that was paid for by the bank ($7730.32) or the amount of the earlier settlement between the parties ($10,000). Those damage claims should be addressed in the underlying case and not in this appeal as sanctions.